J-S37012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRYANT JONES | |
| Appellant | No. 865 WDA 2015 |

Appeal from the PCRA Order May 15, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002915-2008

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 25, 2016**

Appellant, Bryant Jones, appeals from the order entered in the Allegheny County Court of Common Pleas, which dismissed his petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the facts of this case.  Therefore, we have no reason to restate them.  Procedurally, on March 28, 2008, the Commonwealth charged Appellant with criminal homicide, robbery, burglary, and firearms not to be carried without a license.  Appellant proceeded to a jury trial on June 22, 2010.  On June 24, 2010, the jury convicted Appellant of first-degree murder, robbery, and firearms not to be carried without a license.  On September 9, 2010, the

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

court sentenced Appellant to mandatory life imprisonment without the possibility of parole for the first-degree murder conviction and a term of five (5) to ten (10) years' imprisonment for the robbery conviction. The court imposed Appellant's sentence for the first-degree murder conviction consecutive to Appellant's sentence for the robbery conviction.

On December 9, 2010, Appellant timely filed a *pro se* PCRA petition in which he asked the court to reinstate his direct appeal rights *nunc pro tunc*. The PCRA court appointed counsel on December 15, 2010, and counsel filed an amended PCRA petition on March 15, 2011. On March 24, 2011, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*, and Appellant filed a *nunc pro tunc* notice of appeal on March 29, 2011. On December 3, 2012, this Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on April 30, 2013. ***Commonwealth v. Jones***, 64 A.3d 9 (Pa.Super. 2012), *appeal denied*, 619 Pa. 721, 65 A.3d 413 (2013).

On June 6, 2013, Appellant timely filed a *pro se* PCRA petition, and the PCRA court appointed counsel on July 8, 2013. Counsel filed an amended PCRA petition on September 8, 2014, which raised various claims of ineffective assistance of trial counsel. After a hearing on May 7, 2015, the PCRA court denied relief on May 15, 2015. Appellant timely filed a notice of appeal on June 2, 2015. On June 3, 2015, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(b), and Appellant timely complied on June 16, 2015.

Appellant raises the following issues for our review:

> WHETHER APPELLANT'S TRIAL COUNSEL…WAS INEFFECTIVE, WHICH IN THE CIRCUMSTANCES OF [THIS] PARTICULAR CASE, SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE?
>
> WHETHER THERE WAS A VIOLATION OF THE CONSTITUTION OF THE COMMONWEALTH OR THE CONSTITUTION OF THE UNITED STATES WHICH SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE?

(Appellant's Brief at 6).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). The PCRA court findings will not be disturbed unless the certified record provides no support for the findings. *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa.Super. 2007), *appeal*

*denied*, 597 Pa. 715, 951 A.2d 1163 (2008). If the record supports a PCRA court's credibility determination, it is binding on the appellate court. ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa.Super. 2014).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit, (2) counsel had no reasonable strategic basis for his action or inaction, and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***. "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

A petitioner's claim that counsel was ineffective for failing to call a particular witness, requires certain proof:

> [T]he [petitioner] must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness' existence; (4) that the witness was prepared to cooperate and would have testified on [petitioner's] behalf; and (5) that the absence of the testimony prejudiced [petitioner].

*Commonwealth v. Michaud*, 70 A.3d 862, 868 (Pa.Super. 2013). Significantly, a court shall not find trial counsel ineffective for failure to call a witness unless there is some showing by the petitioner that the witness' testimony would have been beneficial under the circumstances of petitioner's case. *Commonwealth v. Auker*, 545 Pa. 521, 548, 681 A.2d 1305, 1319 (1996). "[F]ailure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy."

***Michaud, supra*** at 868.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Randal B. Todd, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion, filed January 4, 2016, at 9-14) (finding: **(issues 1-2)** initially, Appellant's claims regarding timeline of shooting are premised on assumptions, which are not supported by record; Appellant's argument assumes Ms. Burwell placed 911 call immediately after shooting at 11:42 a.m.; however, Officer Hess stated time of 911 call was approximate, and Ms. Burwell testified that some time passed before she called 911 because she was not immediately aware that shooting had occurred; given uncertainty over exact time of shooting, Appellant did not demonstrate that trial counsel's failure to object to Detective Hennessy's testimony concerning timeline would have affected outcome of trial; because Appellant presented no conclusive evidence as to exact time shooting took place, his claim that Detective Steckel's testimony would have established Appellant left Victim's residence prior to shooting also has no merit; Detective Steckel's testimony merely would have shown Appellant left Victim's residence eight minutes prior to 911 call instead of four minutes; in light of Victim's brother placement of Appellant in house at time of shooting, this testimony would not have changed outcome of trial; Appellant's failure

to establish exact time of shooting similarly undermines his claim that he was prejudiced by trial counsel's failure to object to authentication of various cellphone records; Appellant's bald assertion of time differences between testimony and cellphone records does not establish that records were manipulated; instead, time differences merely shows some differences in each timekeeping device used during events; further, these differences do not undermine Commonwealth's case due to fact that Appellant did not establish exact timeline for shooting and 911 call; under these circumstances, Appellant failed to demonstrate that objection to authentication of cellphone records would have changed outcome of trial; to extent Appellant alleges trial strategy was to question timeline of shooting, trial counsel testified credibly at PCRA hearing that strategy was to establish Victim's brother as shooter; trial counsel discussed trial strategy with Appellant multiple times, and parties agreed that Appellant would testify to events which occurred on day of shooting; trial counsel further testified that trial strategy was negatively impacted by Appellant's last minute decision not to testify; record supports trial counsel's testimony from PCRA hearing because record demonstrates that trial counsel maintained this strategy throughout trial; therefore, Appellant failed to prove any of his ineffective assistance of counsel claims, and court properly dismissed Appellant's PCRA petition).  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

v.

BRYANT JONES,

Petitioner.

CRIMINAL DIVISION

NO:    CP-02-CR-0002915-2008

PCRA

**OPINION**

JUDGE RANDAL B. TODD

COPIES SENT TO:

Stephen A. Zappala, Jr.
District Attorney

By

Ronald Wabby, Esquire
Assistant District Attorney
401 Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel of Record for Petitioner:

Christy P. Foreman, Esquire
220 Grant Street
Fifth Floor
Pittsburgh, PA 15219

Bryant Jones, Petitioner
#JS7224
SCI Coal Township
1 Kelley Drive
Coal Township, PA 17866

FILED
16 JAN -4 PM 3:47
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) ) ) | CRIMINAL DIVISION |
| v. | ) ) | NO:  CP-02-0002915-2008 |
| BRYANT JONES, | ) ) | |
| Petitioner. | ) ) | |

## OPINION

TODD, J.

January 4, 2016

This is an appeal by Petitioner, Bryant Jones, from an order entered on May 15, 2015 dismissing Petitioner's Amended PCRA Petition. On June 6, 2013 Petitioner filed a pro se PCRA Petition and on July 8, 2013 an order was entered appointing counsel. On September 8, 2014 counsel filed an amended PCRA Petition. On February 23, 2015 the Commonwealth filed its answer to the PCRA Petition.  On March 2, 2015 counsel filed a Motion For Leave to the Supplement Amended PCRA Petition. An evidentiary hearing was held on May 7, 2015. On May 15, 2015 an order was entered denying Petitioner's Amended PCRA Petition. On June 2, 2015 Petitioner filed a timely notice of appeal. On June, 2015 an order was entered directing Petitioner to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On June 16, 2015 Petitioner filed his Concise Statement that set forth the following:

> " I. Appellant's prior counsel was ineffective for failing to object to hearsay testimony and/or seek the exclusion of such testimony given by Detective Bartley Hennessy, for failing to call Detective Steckel to testify, and for failing to object to the Commonwealth's improper authentication of telephone records, which in the circumstances of the particular case, so undermined the truth – determining process that no reliable adjudication of guilt or innocence could have taken place?"

1

"II. There was a violation of the Constitution of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."

## BACKGROUND

Petitioner was convicted following a jury trial on June 24, 2010 of murder in the first degree as a result of the shooting death of Randy Edwards on January 13, 2008. The shooting took place at Edward's home at 1304 Riggs Ave. in Braddock, Pennsylvania where he lived with his brother, Terrence Edwards, and Terrence's girlfriend, Dominique Burwell. Randy Edwards was a known drug dealer in the Braddock area and the evidence established that Petitioner arranged to meet Edwards at his home to purchase drugs. The jury found that Petitioner entered the home and shot and killed Edwards, stole his drugs and fled the scene in the jitney that brought him. It was by sheer chance, however, that on the day of the shooting, Edwards' home was under surveillance by detectives as part of a joint investigation by the U.S. Attorney's office and the FBI into his drug dealing. This surveillance included detectives conducting visual surveillance of Edward's home, which was also being videotaped, as well as monitoring of his phone. Detectives were also following vehicles that came to and left the home in an attempt to identify individuals dealing with Edwards. In his Amended PCRA Petition, Petitioner asserts that trial counsel was ineffective by failing to object to certain hearsay testimony of one of the detectives that was admitted to establish the time that Petitioner arrived at the residence and left the residence and which was used to establish Petitioner's presence in the residence on the day of the shooting.

At trial the Commonwealth called Officer Eric Hess of the North Braddock Police Department who testified that on January 13, 2008 his department received a call to respond to

2

1304 Ridge Ave. for a report of a male with a gun. Officer Hess testified that the call was received at 11:42 a.m. but stated that the time was approximate in that it could have been a minute before or a minute after. (T., p. 56). On cross examination Officer Hess testified that the time was as accurate as it could be. (T., p. 65)

The Commonwealth called Detective Bartley Hennessy, who was part of the team of detectives conducting the surveillance, who testified that he and Detective Mullen were in a vehicle conducting mobile surveillance while another detective was intercepting phone calls by remote monitoring. (T., p. 70) He also testified that another detective, Detective Steckel, was in a surveillance van near the residence videotaping portions of the activity outside the residence. (T., p. 71) [1] Detective Steckel would radio pertinent information to Detective Hennessy concerning the surveillance. Detective Hennessy testified as follows:

> Q. At a certain time were you informed that there was some activity in the house you were surveying?
> A. Yes, sir.
> Q. What was the information you received?
> A. *At approximately 11:34 we received information, I received information from Detective Steckel that indicated a black male had gone into the residence* and a gold colored SUV was parked in front of the residence.
> Q. As far as that time goes, as you documented it, did you state approximately 11:34?
> A. I did, yes.
> Q. Why did you say approximately as opposed to exactly 11:34?
> A. We were working off the clock radio and the clock radio is set for whatever it was set, I don't know if it was set at an accurate time, but it was set for us to use. It was close to being accurate.
> Q. Since this day and since speaking with myself and other detectives on this case, have you become aware of the fact that there was a call detail log that was recovered for the cell phone of Randy Edwards?

---

[1] Detective Hennessy testified that Detective Steckel was not available to testify because he had undergone knee replacement surgery and was not feeling well. (T., p. 71)

3

A. Yes.

Q. Did you become aware that at 11:36 a.m. there is a call from Randy Edwards to a cell phone used by a jitney driver, driver Richard Green?

A. Yes.

Q. Can you explain how your time is 11:34, two minutes before he is entering the residence and that's two minutes before the call was made?

MR. JOBE: Your Honor, I'm going to object to speculation.

THE COURT: I'll allow it. Go ahead.

THE WITNESS: The only explanation I have, if every one of you checked your watch, it would be a minute off or 30 seconds off or a minute and a half.

Q. So 11:34, which is the time you documented, you have that a black male is entering the residence, correct?

A. Correct.

Q. Were you told what kind of vehicle it was that was associated with the black male?

A. It was a gold colored vehicle.

Q. What's the next piece of information you have that you document?

A. *At 11:38 I was informed by Detective Steckel that a black male had exited the residence* and had entered the passenger side of the gold colored vehicle. (T.,pp. 74-76)

There was no objection made by trial counsel to the hearsay testimony concerning Detective Steckel's observations of a black male entering and exiting the residence and the times at which he did so.

Detective Hennessy then testified that they followed the gold Jeep in an attempt to identify its occupants but were not able to do so and instead only obtain the license plate number. He then testified that he again received information from Detective Steckel that a blue SUV arrived at the residence and so he was returning to the residence. As he was returning to the residence Detective Steckel also reported that the local police had arrived at the residence and that another detective monitoring the calls reported that he had heard that a shooting had

4

occurred inside the residence. Hennessy received this information at approximately 11:45 AM. (T. 79)

The Commonwealth also called Detective Shane Countryman who identified the Cricket phone records of the victim. (T., p. 283) These phone records were entered into evidence without objection or further authentication. (T., 283) Detective Countryman used the records to identify two phone calls made at 11:36 a.m. One was *from* the jitney driver's phone to the victim's phone and the second was from the victim's phone *to* the jitney driver's phone. (T., pp. 288-289)

The Commonwealth called the jitney driver, Richard Green. A review of his testimony indicates that he professed little or no recollection of the events of the day. Mr. Green was asked to review the transcript of a statement that he gave on January 13, 2008, however, after reviewing the transcript, he testified that it did not really refresh his recollection of the events. Green acknowledged that he had a cell phone on the date of the incident but testified that he did not know the number and indicated that the police confiscated his cell phone on the day of the shooting. (T., pp. 142-143). When asked if the person who he was riding on the date of the incident used his phone, Green testified, "I carry my cell phone on my console. I don't know if the individual picked it up or not." (T., p. 142) As a result of Green's testimony, his recorded statement was identified by Detective Timothy Langan and then played to the jury. (T., pp. 149 – 157). At the conclusion of the statement a stipulation was entered into by Petitioner's trial counsel as to Green's cell phone number on January 13, 2008. (T., p. 157)

5

Based on the above evidence, both Petitioner's counsel and the prosecutor argued to the jury at closing the significance of the various times in relation to Petitioner's presence at the residence. Petitioner's counsel argued:

"I also mentioned the timeline in this case, and you heard from Detective Hennessey, who is making contemporaneous notes based on observations, and he told you that he seen (sic) a black male enter the residence at 11:34, and he recorded a black male left the residence at 11:38. Officer Hess testified that the 911 call came in at 10:42. (sic) That is four minutes after the black male left the residence on the surveillance tape. So I don't know how in the world this individual could shoot anybody if he had left four minutes prior to the 911 call. You heard from Dominique Burwell. She told you she called 911 shortly after the bang, shortly after the shots she is on the phone calling 911." (T., p. 308)

The prosecutor also discussed the timeline, emphasizing that the phone records were more accurate, arguing as follows:

"After Bryant Jones called a couple of times from that cell phone, apparently he didn't get a hold of him at 11:36, Randy calls back to that cell phone and gets a hold of him. So at 11:36 we know that he is not in the residence yet because obviously he wouldn't be calling him from the jitney cell phone if he is inside. 11:36 he is still outside. I would submit to you he was right outside and said I'm here, or Randy said, okay, I'm here, come on in. *11:36 is when he gets there.* On Detective Hennessey's report he says 11:34, but like I said, I hope you see, common sense wise, *it is just a two minute mistake by Bart Hennessey. So we know he enters at 11:36,* what you can look at as accurate because it really doesn't depend on the accuracy of the clock unless the minutes were wrong, but there is no evidence of that." (T., p. 313)

## DISCUSSION

Petitioner now asserts that trial counsel was ineffective by failing to object to the hearsay testimony of Detective Hennessy regarding the information he received from Detective Steckel. Specifically, Petitioner asserts that trial counsel,

". . . failed to object to Commonwealth witness Detective Bartley Hennessy's testimony regarding statements he received from Detective Steckel in connection with the surveillance video timeline. Due to trial counsel's failure to object, inadmissible hearsay testimony was admitted, and the Commonwealth was able to establish a timeline of events which put Petitioner at the victim's residence at

6

approximately the time of the shooting. Trial counsel was further ineffective for failing to call Detective Steckel to testify at Petitioner's trial to clarify the glaring timeline discrepancy of the surveillance footage and for failing to motion this Hon. Court for a continuance in order to secure Detective Steckel's testimony." (Petition, p. 24)

In support of his argument, Petitioner attached as Exhibit "A" to his Amended PCRA Petition a supplemental report of Detective R. Ladley dated January 14, 2008. This report dealt with the processing of the surveillance videotape and contains the following statement:

> "I met with Det. Holman at 3:00 PM. I accompanied Det. Holman to the lab where he examined the tape. The time and date stamp were not visible on the tape. I contacted Det. Steckel and requested his assistance to determine event times on the tape. *Det. Steckel's (sic) arrived at the lab and produced notes indicating that a person exited the residence at 11:34 AM and left in a gold colored Jeep.*" (Exhibit "A" - Amended PCRA Petition) (Emphasis added)

Petitioner contends that if Detective Steckel had been called to testify he would have testified that a person *exited the residence at 11:34 a.m.*, and not 11:38 a.m., as Detective Hennessy testified. Petitioner contends that this evidence would have established that he left the residence eight minutes before the shooting, which he contends occurred immediately before the 911 call was made at 11:42 a.m. This timeline would have supported Defendant's position at trial that someone else, most likely the victim's brother, Terrance Edwards, actually shot the victim as the result of an argument or dispute of some nature.[2] Consequently, Petitioner argues that trial counsel's failure to object to Detective Hennessy's hearsay testimony and the failure to call Detective Steckel to establish the appropriate timeline constituted ineffective assistance counsel.

---

[2] The argument was made at trial that the motive for Terrence Edwards to shoot his brother was that Terrence discovered that his brother was a "snitch" or in some manner was cooperating with investigating authorities. (T., pp. 304-305)

7

Petitioner also asserts that trial counsel was ineffective in failing to object to the authentication of the Cricket phone records by Detective Countryman. This claim is based on a disclaimer attached to the phone records that were produced by Cricket and offered into evidence. This disclaimer states as follows:

> "At the request of the law enforcement agent receiving the following Subpoena Compliance information, Cricket Communications ("Cricket") provides the following information electronically in a searchable, manipulable form. Although Cricket verifies the authenticity of the information attached to this e-mail as sent, Cricket cannot and will not testify to the authenticity of this information after it is received by the recipient law enforcement agency. This is because the attached information electronically sent by Cricket is manipulable. Consequently, were a Cricket representative called to testify in court, at a deposition, or by an affidavit about the authenticity of the attached information, Cricket could not do so. The recipient law enforcement agency is therefore notified that if called to testify, a Cricket representative would bring a hard copy of the attached information as an authentic Cricket record." (Amended PCRA petition, Exhibit B (5))

Petitioner asserts that by failing to require the Cricket phone records to be authenticated by a designated representative of Cricket, the Commonwealth was able to manipulate the phone records to establish an inaccurate timeline which placed him at the residence at the time of the shooting.

Finally, Petitioner asserts that trial counsel was ineffective because he stipulated to the cell phone number of the jitney driver, Richard Green. Petitioner asserts that this information was then used to place him at the scene of the shooting.

In order for Petitioner to be entitled to relief on the basis that trial counsel was ineffective, Petitioner must show by a preponderance of the evidence ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

8

*Commonwealth v. Brady*, 741 A.2d. 758, 763 (Pa. Super. 1999) This standard requires

Petitioner to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable,

objective basis for his actions; and (3) that, but for the errors or omissions of counsel, there is a

reasonable probability that the outcome of the proceedings would have been different, that is,

that the petitioner was prejudiced by the alleged ineffectiveness of counsel. *Commonwealth v.*

*Kimball*, 724 A.2d 326, 333 (1999). Counsel is presumed to be effective, however, and the

burden rests with Petitioner to overcome that presumption. *Commonwealth v. Pierce*, 527 A.2d

973, 975 (1987), *Commonwealth v. Pirela*, 580 A.2d 848, 850 (1990), *appeal denied*, 594 A.2d

658 (1991). If Petitioner fails to meet any one of these three prongs, relief should be denied.

*Commonwealth v. Wells*, 578 A.2d 27, 32 (Pa. Super. 1990)

In reviewing the evidence in this case, it is clear that Petitioner has failed to establish that

trial counsel was ineffective. Initially it should be noted that Petitioner's argument is premised

on an assumption that is not supported by the record. Petitioner's argument relies on a finding

that the shooting took place *immediately* before the 911 call was made and that the 911 call was

made at 11:42 a.m. The record establishes that Officer Hess did not testify that the call was

made at exactly 11:42 a.m. Instead, his testimony was very clear that the time that he gave for

the 911 call was an approximation within a minute or so. In addition, it is also clear that

Petitioner's contention that the record establishes that Dominique Burwell made the 911 call

*immediately* after the shooting is also inaccurate. Regarding the time of the call, Burwell

testified as follows:

> "As I go upstairs, I start looking for something to wear, and then I would say a
> couple minutes later, I'm not sure, I'm not exactly sure how much later, but I
> heard gunshots, but at the time I didn't think it was gunshots. I thought
> something had fell downstairs. Because my little boy came running up the steps
> and the only time he runs is when he did something so I'm thinking he did
> something because I heard, it was consecutive, boom, boom, boom, and I'm

9

standing there and then later on I hear Terry, he runs up the steps, and he tells me hide the kids and call the police." (T., p. 111)

Burwell also testified that while she was on the phone with the 911 operator she remembered that she had left her daughter downstairs on the couch and, despite the fact that the 911 operator was telling her not to, she went to get her daughter, after already having hidden her other children. She testified:

> "Me and my children - -*I buried them under some clothes in the bedroom* and I remember I left my daughter downstairs on the couch whenever I went upstairs because I left her on the couch because she was still asleep and I remembered she was down there." (T., pp. 113-114)

The evidence does not establish that Burwell made the 911 call immediately after the shooting. When specifically asked on cross-examination how many seconds elapsed between the sounds of the shooting until the 911 call was made, Burwell testified:

> Q. How many seconds elapsed between the sounds of that banging to that 911 call? Was it mere seconds?
> A. "At first, I'm really not getting what he is saying now, I mean, I just seen him, I'm confused at the time. So whenever I see it was serious I proceeded to call 911. I'm not sure how much longer it was after that."
> Q. It's fair to say if your brother-in-law was shot, you would call 911 pretty quickly, right?
> A. Right.
> Q. And that's probably what you did?
> A. Right. (T., p. 119)

Given the approximation of the time when the 911 call was received by the police and the fact that the evidence establishes that there was some time that intervened between the shooting and the time that Burwell made the call, Petitioner has failed to demonstrate that trial counsel's failure to object to either the testimony concerning the timeline or the phone records would have affected the outcome of the trial. Petitioner argues that if Detective Steckel had been called to testify his testimony would have established conclusively that Petitioner exited the residence at

10

11:34 a.m., eight minutes before the shooting and, therefore, someone else had to do the shooting.[3] However, there is no conclusive evidence as to exactly when the shooting took place, given the evidence that certainly some time elapsed between the shooting and the 911 call and the approximation of when the 911 call was received. Even assuming it was established exactly when the 911 call was received by reference to the phone records, there was still an undetermined time gap between the time of the shooting and the time Burwell placed the call. Therefore, given that Petitioner was identified by Terrence Edwards as being in the residence, there is no reasonable probability that the outcome of the trial would have been different if it was shown that the time between Petitioner left the residence and the 911 call was eight minutes, as opposed to four minutes, or something in between.

As to Petitioner's claim that counsel was ineffective in failing to object to the phone records, Petitioner has also failed to establish that he was prejudiced by the admission of the records. At the PCRA hearing, Petitioner testified that the phone records were in direct contradiction to the information contained in Exhibit "A", the memo by Detective Ladley that indicated that Detective Steckel's notes stated that a person exited the residence at 11:34 a.m. as opposed to the phone records which the Commonwealth argued established that Petitioner was still outside the residence at 11:36 a.m. This discrepancy does not establish that the phone records were manipulated. Instead, this evidence establishes only that there were inconsistencies between the timekeeping devices, log clocks or watches that were being used to record the events that day. Only if the exact sequence of events in the house after the shooting could be established, as well as the exact time between the shooting and the 911 call, would the exact time

---

[3] The evidence established that no one else was seen entering or leaving the residence from the time Petitioner exited the residence and left in the gold Jeep and the time the local police responded to the scene.

11

when Petitioner exited the house be of any importance. In addition, the stipulation to Green's cell phone number was not prejudicial. The evidence establishes that the investigating detectives took possession of Green's cell phone and obtained the pertinent records regarding the phone calls made that day. There is no reasonable probability that the stipulation regarding the cell phone number had any effect on the outcome of the trial.

At the PCRA hearing Petitioner testified that the trial strategy that he expected his counsel to pursue was to establish the timeline to show that he was not present at the time the crime was committed. However, trial counsel credibly testified that the timeline was not the basis of the defense. At the PCRA hearing trial counsel testified as follows:

> "To me, the timeline wasn't very compelling. My defense strategy was not that he wasn't present. Obviously, I had a brother who witnessed him in the residence allegedly." (T., p. 6)

Counsel also testified:

> "The defense strategy was that he was there, but he wasn't there at the time of the shooting. He was there in close proximity to that. So the timeline was not clear-cut. So it was vague to me, so I would assume it would be vague to the jury as to what time he was there and whether he was there when the shooting occurred. So I didn't see the point of diving into something which was not conclusive. The timeline was very elusive, if you will, based on the evidence. *So based on that, our defense strategy was that he was there to do a drug deal, and there was an argument that was taking place between the brothers, and that the brother shot the other brother because he was a quote, unquote snitch.* That was the defense strategy. So there was no need for me to say he wasn't there. He was there, but he wasn't there at the time of the shooting. That was the defense strategy. " (T.,pp. 7-8).

Counsel also testified that he met with Petitioner numerous times prior to trial and they agreed on the strategy to be pursued in his defense, which included Petitioner testifying to the events that he witnessed when he was in the residence, particularly the argument that was occurring between the victim and his brother. Counsel testified:

12

Q. So when you say it's our defense strategy, it was you and who else?

A. Mr. Jones and I met down the jail several times, often, reviewed the case together, and agreed that was our defense strategy.

Q. How were you planning on presenting your defense strategy with respect to your theory of the case?

A. Listing all the points that I needed out of the Commonwealth's case, which I had did. The brother testified that snitches get killed. That was out of his own mouth. *And I needed my client to corroborate what happened during the time that he arrived at the residence*, because we have two live witnesses put him at the scene and a fingerprint inside the residence." (T., p. 8) (Emphasis added) [4]

Trial counsel also credibly testified that the defense strategy was affected by the fact that Petitioner had indicated that he was going to testifying in his own defense, but then elected not to do so. Counsel testified:

"I pleaded with Mr. Jones during the lunch break that there were loose ends that needed to be tied up and the only person I had available to answer those questions is him, but I cannot force him to testify." (T. 9)

Petitioner acknowledged that he initially indicated that he would testify but then decided not to (T., p. 30) The evidence as a whole, as previously outlined in the 1925(b) opinion of July 19, 2012 filed at the time of Petitioner's appeal, clearly established that Petitioner was at the residence within minutes of the 911 call being placed. Petitioner's testimony contradicting trial counsel that his entire defense was premised on the timeline is not credible. Counsel pursued a reasonable strategy that included questioning the timeline, but not premising the entire defense on it, given the uncertainties of establishing facts sufficient to establish a certain timeline. Counsel reasonably believed that Defendant would testify concerning an argument between the victim and his brother which would be direct evidence to support the argument that it was the brother who was the killer. Absent Petitioner's testimony, counsel was left to make that

---

[4] The record establishes that Petitioner's fingerprint was actually taken from the passenger side door handle of the gold Jeep. (T., p. 280)

13

argument based on circumstantial evidence and, yet, still argue that Petitioner left the residence four minutes before the shooting occurred. Based on all the foregoing there is no evidence to find that trial counsel was ineffective and Petitioner's Amended PCRA Petition was appropriately dismissed.

BY THE COURT:

_____
TODD, J.

14