645 A.2d 189

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael PIERCE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1993.

Decided July 1, 1994.

516

518

Earl G. Kauffman, Philadelphia, for M.P. Pierce.

Catherine Marshall, Norman Gross, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is a direct appeal from three concurrent judgments of sentence of death. Appellant was convicted of three counts of murder in the first degree as a result of the arson which caused the deaths of his mother, father and grandmother. In addition, the appellant was sentenced to concurrent terms of imprisonment of ten to twenty years for arson[1], ten to twenty years for aggravated assault[2], two and one-half to five years for recklessly endangering another person[3], and, three and one-half to seven years for risking a catastrophe.[4]

1. 18 Pa.C.S. § 3301.
2. 18 Pa.C.S. § 2702.
3. 18 Pa.C.S. § 2705.
4. 18 Pa.C.S. § 3302.

 In all cases where this Court affirms the imposition of a sentence of death we must conduct an independent review to determine if the evidence is sufficient to sustain the underlying conviction for murder in the first degree. *Commonwealth v. Green*, 536 Pa. 599, 640 A.2d 1242 (1994); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In order to prove murder of the first degree the Commonwealth must show that a human being was unlawfully killed, that the accused committed the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991).

The evidence presented in the instant case established that at approximately 3:00 a.m. on the morning of July 10, 1989, Joan Pierce, the appellant's sister, was awakened by the strong smell of gasoline. Joan woke her father, George Pierce, and the two of them descended the stairs to discover the living room sofa on fire. George Pierce opened the basement door and flames then shot forth, forcing them to flee the house. George re-entered the house in an attempt to rescue his wife and mother-in-law. George was unable to reach the stairs and collapsed inside. He was pulled out of the flaming building by neighbors who had been awakened by the fire.

George was taken from the scene to a hospital where he was treated for burns and smoke inhalation. Eventually he was transferred to a nursing home where he died six months later from complications due to smoke inhalation and bronchopneumonia. Appellant's mother, Mary Pierce and her ninety-five-year-old mother, Anna Hayes, were pronounced dead at the scene, with the cause of death later determined to be smoke and soot inhalation.

Upon investigation, experts from the Philadelphia fire department determined that the house burned down as a result of two separate fires, each having been deliberately set. The minor cause of the fire was found to have been deliberately

caused by an open flame being struck to the sofa. The major cause of the fire was found to have occurred in the basement by use of an accelerant. In the opinion of the fire department expert, a plastic anti-freeze bottle found on the basement floor had been filled with gasoline and deliberately set ablaze. In the opinion of the fire department investigator, the fire was the result of arson. The Pierce home was located at 3011 Byberry Road in Philadelphia and was physically located within a row of attached houses.

Sharon DeFazio, a neighbor, testified that she recognized the anti-freeze bottle as identical to the one George Pierce used as a container for gasoline for his lawnmower. Ms. DeFazio testified that Mr. Pierce had, shortly before the fire, given her a similar bottle filled with gasoline for her lawnmower, explaining that it was a safer container in which to keep gasoline. Ms. DeFazio also knew where in his garage Mr. Pierce had kept his anti-freeze bottle containing gasoline. After the fire the anti-freeze bottle containing gasoline was not found in the Pierce garage.

In the garden behind the Pierce home a partial impression of a shoe print was discovered. Soil samples taken from the impression matched soil samples taken from the boots the appellant was wearing on the morning of the fire. A short distance away from and to the rear of the Pierce home, in an area of abandoned buildings, police discovered a partially used book of matches. The same type of matchbooks were found in a box of matchbooks at the home of Tim O'Rielly, where the appellant had been staying the week preceding the fire. The area containing the abandoned buildings was surrounded by a fence. On the top rail of the fence police discovered a soil sample which matched with the samples taken from the impression in the garden of the Pierce home and the sample from the appellant's boots.

At the time the fire was raging two teen-age boys were in the vicinity. The boys, Harry Espanshade and Randy Zehnder, approached two officers who were in the area on an unrelated matter and told them of the fire. The boys then began to walk through the woods towards the fire. As they

were proceeding towards the fire they saw a man running away from the fire wearing jeans and a flannel shirt over a dark T-shirt. The boys immediately gave the police a description of the man. A few minutes later they again saw the man, this time without the flannel shirt. Two hours later while at the scene of the fire the boys saw the same man walking up the street toward the Pierce home. They identified him as the appellant.

Police Sergeant Shanfield was one of the officers who had been notified of the fire by Harry and Randy. As he was driving towards the Pierce house a man crossed in front of his car and ran into the woods. As the man was running Sergeant Shanfield observed him stumble. Two and one-half hours later the Sergeant saw appellant at the police station and recognized him as the man he had seen running into the woods earlier. After appellant was arrested he was treated at the Philadelphia county prison for an injury to his toe.

Joan Pierce, appellant's sister, testified that her parents and appellant had a very strained relationship. Appellant had accused his parents of putting steroids in his food and depriving him of an inheritance from his Uncle Al. One week prior to the fire George and Mary had asked appellant to leave the family residence. Appellant had told Joan on many occasions that he hated their parents and threatened to kill them. Joan had seen appellant on Sunday night before the fire; he was wearing jeans, a dark T-shirt and a red flannel shirt and boots.

The week before the fire appellant had been living with his friend Tim O'Rielly and Tim's mother across the street from his parents' home. Mrs. O'Rielly testified that during that week appellant had told her that he would have no peace while his parents were alive. Appellant told Mrs. O'Rielly that he would get away with murdering his parents and would flee to Indonesia. Mrs. O'Rielly related this conversation to Joan Pierce.

Tim O'Rielly testified that during the week appellant stayed in his home, appellant repeatedly expressed the intent to kill

his parents. Appellant told Tim of his intent to burn down the Pierce home and either commit suicide or escape to Indonesia. Appellant referred to his parents as "the enemy." Appellant explained that he would break his grandmother's neck so she wouldn't have to suffer, or be placed in a nursing home.

Appellant had a disagreement with Tim's mother and decided to leave the O'Rielly home the Sunday before the fire. Appellant left Tim's house about 11:00 p.m. Sunday night before the fire. At that time he was wearing a dark blue or green T-shirt, jeans and boots, and carrying a black and red flannel shirt Tim had given him.

At approximately 3:25 a.m. on the morning following appellant's departure from the O'Rielly home, Tim was in his kitchen when he noticed lights on in the Pierce garage and observed the garage door partially opened. About ten minutes later the lights went out and he heard a thud and then saw the garage door was closed. Two minutes thereafter he saw the fire erupt in the Pierce house. Tim called the police and went outside to help with the fire.

Appellant was arrested later that morning when he was observed walking towards the Pierce home.

The evidence linking appellant to the murder is circumstantial. In testing the sufficiency of the evidence where a conviction is based upon circumstantial evidence, we review the evidence along with all inferences and conclusions that reasonably and logically can be drawn therefrom. *Commonwealth v. Gorby*, 527 Pa. 98, 588 A.2d 902 (1991). Where the conviction for first degree murder is based upon arson the Commonwealth must first establish that there was a fire of incendiary origin and that the accused deliberately caused the fire. *Commonwealth v. Cockfield*, 465 Pa. 415, 350 A.2d 833 (1976). The Commonwealth must then establish that the fire was the cause of death. *Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982). The Commonwealth has established its burden of proof in the instant case; the evidence was sufficient to sustain appellant's convictions for murder in the

524

first degree as to Anna Hayes, Mary Pierce and George Pierce.[5]

We now turn to the specific questions raised by appellant. Appellant raises five claims of ineffective assistance of trial counsel; these shall be addressed first. An allegation of ineffective assistance of counsel must be reviewed according to the following criteria:

> The standard to be applied in reviewing claims of ineffective assistance of counsel is well settled. The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of the trial is presumptively effective. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985).

*Commonwealth v. Weiss*, 530 Pa. 1, 5–6, 606 A.2d 439, 441 (1992).

The first four allegations of ineffectiveness charge trial counsel with having failed to properly prepare for the trial and penalty hearing. In allegations one and two, respec-

---

**5.** Appellant does not challenge the sufficiency of the evidence as to his additional convictions on the charges of arson, aggravated assault, recklessly endangering another person and risking catastrophe.

tively, counsel is charged with having failed to obtain appellants' naval records and his employment records from the United States Postal Service. Appellant argues that his honorable discharge from the Navy and his steady employment at the post office would have been advantageous arguments in support of mitigation at the penalty stage. Counsel testified at the hearing on post-trial motions that she had made efforts to obtain these records and that appellant refused to sign releases which would have enabled her to obtain the service and employment records. Appellant now claims that counsel was ineffective for not forcing his hand and seeking a court order which would have compelled disclosure of these records. Trial counsel testified that she considered seeking a court order but decided against it because, if the records were damaging to appellant, procuring them by court order would have made them accessible to the prosecution.

Trial counsel cannot be deemed ineffective for failing to override the decision of her client. Further, counsel's decision not to seek the records by court order was reasonable as it precluded the prosecution from obtaining possibly damaging information. The fact that the records as revealed were not damaging to appellant does not make counsel's decision unreasonable.[6] As we find counsel's decision reasonable, our inquiry ends. Counsel was not ineffective for failing to compel production of either appellant's naval discharge records, nor his employment records from the United States Postal Service. *See Washington v. Maroney, supra.*

Appellant next argues that trial counsel was ineffective for failing to obtain an arson expert for the defense. Trial counsel testified that her strategy was to dispute the circumstantial evidence connecting appellant to the crime, not to dispute that the fire had been deliberately set. In fact in the

6. The naval records did indicate a few blemishes, although appellant was honorably discharged. The postal records also indicate various complaints and disciplinary actions during appellants' six years at the post office. The weight to be given the records, had they been presented, would certainly have been a matter for the jury; however, the records are not strongly indicative of good character as is now implied by appellate counsel in his brief.

argument to this court appellant does not contest that the fire was deliberately set. Rather, appellant argues that an arson expert would have been able to establish that the fire in the living room would not have burned down the house, and if George Pierce had not opened the basement door, that fire would not have spread. Appellant asserts that the fires were intended to frighten his parents, not kill them, and he believes an arson expert would have been able to bolster this proposition.

Appellant's claim is absurd. The fires were deliberately set, that is arson. *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967). Appellant cannot minimize the consequences of his actions by arguing that although he deliberately set the fires, *if* George Pierce had not opened the basement door, the fire would not have spread. Counsel was not ineffective for failing to engage an arson expert to pursue this meritless strategy.[7] *Commonwealth v. Durst, supra.*

Next, appellant asserts that trial counsel was ineffective for failing to present psychological testimony as to appellant's mental health and the effects of his alcohol and drug abuse. Appellant argues that trial counsel should have recognized that there was something critically wrong with appellant's thought process and forced appellant, against his own wishes, to present psychological evidence of emotional and mental disturbance in mitigation at the penalty phase. Trial counsel testified at the hearing on post-trial motions that she requested appellant submit to psychological and psychiatric interviews prior to trial and that appellant vehemently refused to cooperate. In fact at one of the hearings on post-trial motions (hearings were held on four separate dates) appellant testified that he had dismissed his first court appointed attorney over the issue of psychiatric evaluations. Appellant emphatically stated that there was nothing wrong with him and that he would not cooperate with preparation of psychological or psychiatric testimony. An accused cannot

7. In fact, at the post-trial hearing, the arson expert called by appellate counsel agreed with the Commonwealth's expert that the fire was deliberately set and that gasoline was the accelerant.

refuse to cooperate with counsel in preparation of a particular trial strategy and then argue counsel's ineffectiveness for failing to pursue that course of action. *See Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984) (a defendant must be prepared to accept the consequences of his obstinance). Counsel was not ineffective for failing to produce expert testimony on the issue of appellant's mental state.

▉ The final ineffectiveness claim is that trial counsel erred in failing to object to the testimony of appellant's aunt, Helen Tarsi, which occurred in violation of the trial court's sequestration order. Prior to Ms. Tarsi's being called, trial counsel did object on the basis that Ms. Tarsi had been in the courtroom in violation of the sequestration order.[8] This objection was overruled by the trial court. The discussion between counsel and the court was interrupted so that trial counsel could explain the court's ruling to appellant. Appellant then stated he had no further objection to Ms. Tarsi's testifying; rather he expressed concern that it would cause Ms. Tarsi to become upset if forced to testify. Accordingly, appellant's claim as to trial counsel's failure to object is incorrect.

▉ Additionally, appellant claims counsel was ineffective for failing to object to the substance of Ms. Tarsi's testimony. Earlier in the trial Joan Pierce had testified that one of the reasons appellant hated his parents was his belief that they had stolen his inheritance from Uncle Al, Ms. Tarsi's husband. Ms. Tarsi was called to testify that her husband died intestate and all property they owned was held in the entireties, thus there was no inheritance. Further, at the time of his death Al Tarsi had four children and twelve grandchildren, none of whom received anything from the estate.

The substance of Ms. Tarsi's testimony went to a collateral matter introduced at trial, *i.e.,* appellant's belief that his parents had stolen his inheritance from Uncle Al. The fact that Ms. Tarsi testified after being in the courtroom and hearing the testimony of Joan Pierce on this issue was thor-

8. This discussion occurred on the third day of trial, October 26, 1990, and appears at p. 407 of the notes of trial testimony.

oughly explored on cross-examination. Thus, the jury was able to weigh what effect if any, Ms. Tarsi's presence in the courtroom had upon her trial testimony. Further, the testimony itself disputed the Commonwealth's position that appellant's motive for the murder was to get back at his parents for stealing his inheritance. Under the circumstances trial counsel cannot be ineffective. Counsel objected to the witness being permitted to testify, and when the objection was overruled she effectively examined the witness. This issue is without merit.

Having disposed of appellants' claims as to the ineffectiveness of trial counsel, we now turn to his allegations of prosecutorial misconduct. A new trial will be granted where the conduct of the prosecution misleads the jury so that they form in their minds a fixed bias such that they cannot fairly weigh the evidence and render a true verdict. *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987); *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975). The assertions of prosecutorial misconduct concern the prosecutor's calling of George Pierce, Jr. and Helen Tarsi to the stand, after both witnesses had been present in the courtroom in violation of the sequestration order. Trial counsel objected, as discussed above, and the objection was overruled. We note that the prosecutor admitted allowing George Pierce, Jr. to remain in the courtroom, but claimed to be unaware of the identity of Ms. Tarsi prior to the objection of trial counsel regarding the violations of the sequestration order.

In making this argument appellant focuses upon the conduct of the prosecutor in allowing the witnesses to remain in the courtroom. Appellant asserts that the witnesses were then able to conform their testimony consistent with that of the prosecution witnesses they had observed, and therefore circumvented the very purpose of the sequestration order. First, we acknowledge that the sequestration order was in fact violated by the prosecutor. It is irrelevant whether or not she was actually aware of the identity of Helen Tarsi; the prose-

cution is obliged to ensure that all of the witnesses she intends to call comply with the orders of the trial court. However, the fact that a violation of the sequestration order occurred does not, in and of itself, lead to a finding that the prosecutor committed misconduct of such a nature that a new trial is required. To prevail on this issue appellant must show that the prosecutor's conduct here was a deliberate attempt to mislead the jury. *Collins, supra.* In order to properly resolve this issue we must look at the substance of the testimony offered by George Pierce, Jr. and Helen Tarsi.

George Pierce, Jr. was the son and grandson of the decedents and the brother of the appellant. He testified that he had identified the bodies of each of the decedents. The prosecutor was prohibited from asking any questions regarding his knowledge of the relationship between the appellant and the decedents. Helen Tarsi's testimony, as related above, dealt exclusively with the fact that her husband, appellant's Uncle Al, died intestate, thus no inheritance was devised to appellant. Neither the testimony of George Pierce, Jr. nor that of Helen Tarsi could have been altered by their presence in the courtroom prior to taking the stand. Each witness testified to personal observations outside the scope of knowledge of any other witnesses.

The essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead the jury. *See Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); and *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971). Based upon the actual testimony of the witnesses who were in the courtroom in violation of the sequestration order, we do not find that this prosecutor intentionally and deliberately caused the violation in an effort to mislead the jury and purposely create undue prejudice to the appellant.[9]

9. We note that the remedy for a violation of a sequestration order is a matter left to the discretion of the trial court. *Commonwealth v. Smith,* 464 Pa. 314, 346 A.2d 757 (1975). Further, based upon our review of

530

■■■■■ Next, appellant asserts that the trial court erred in denying his request for a view. Appellant specifically wished to have the jury physically view the area where Harry Espenshade, Randy Zehnder and Sergeant Shanfield testified that they had observed the appellant on the night of the fire. The view was requested in order to illustrate that the lighting conditions were such that the identification testimony of these witnesses was suspect. The trial court denied the view. Absent an abuse of discretion the decision of the trial court will not be overturned. *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482 (1978).

The evidence presented included a significant number of photographs and a map of the area in question. The trial court found that the jury was able to discern the physical layout and that they were adequately apprised of the lighting conditions on the night of the fire. In addition, since the fire itself altered the light available on the night the identifications were made, and those exact conditions could never be adequately duplicated, the court chose to deny the request for a view. Given the trial court's explanation we cannot find that an abuse of discretion occurred.

■■■■ In his final issue raised in the guilt stage, appellant asserts that the verdict was against the weight of the evidence. Here the appellant attacks the credibility of various witnesses and the inconclusiveness of certain physical evidence. As this Court has repeatedly stated:

> On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse,* 401 Pa. 242, 261, 164 A.2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan,* 436 Pa. 450, 456, 263 A.2d 734 (1970), *cert. denied,* 400 U.S. 882, 91 S.Ct. 127, 27 L.Ed.2d 120; *Commonwealth*

the testimony of George Pierce, Jr. and Helen Tarsi, we do not find any error by the trial court in permitting their testimony.

*v. Schuck,* 401 Pa. 222, 228, 164 A.2d 13 (1960), *cert. denied,* 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961).

*Commonwealth v. Farquharson,* 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976). Accordingly, we decline the appellant's invitation to substitute our judgment as to the weight of the evidence for that of the jury and the trial court.

We now turn to appellant's final argument, which concerns the penalty stage of the proceeding. Upon deliberation following the penalty stage proceedings, the jury unanimously found two aggravating circumstances: 42 Pa.C.S. § 9711(d)(6) (The defendant committed a killing while in the perpetration of a felony) and (d)(7) (In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense) and one or more of the jurors found one mitigating circumstance, 42 Pa.C.S. § 9711(e)(1) (The defendant has no significant history of prior criminal offenses). The jury unanimously found that the aggravating circumstances outweighed the mitigating circumstance and thus, concluded that a sentence of death at each count of murder in the first degree should be imposed.

Appellant asserts that it was error to permit the jury to consider both aggravating circumstance (d)(6) and (d)(7). Appellant does not dispute the applicability of aggravating circumstance (d)(7) to this case. Rather, appellant focuses upon the aggravating circumstance (d)(6) (Killing committed in perpetration of a felony). The appellant argues that when a murder is committed by arson the arson is an element of the crime of murder and should not be considered as a separate criminal act. Appellant asserts that if he had shot or stabbed the victims in this case he would not be facing an additional aggravating circumstance simply because of the method by which he chose to commit the homicide. Appellant's argument is absurd. The sentencing scheme at issue specifically sets forth aggravating circumstances which are designed to take into account the method by which the accused has committed the offense. *See generally,* 42 Pa.C.S. § 9711(d). Aggravating circumstance (d)(6) applies in this case precisely because

this appellant chose to commit murder in the first degree by means of arson, a felony. Accordingly, appellant's argument that aggravating circumstance (d)(6) should not have been considered in this case is without merit.

Finally, in accordance with our statutory duty, 42 Pa.C.S. § 9711(h)(3), we must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon our review of the record we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We further find that the evidence was sufficient to establish the two aggravating factors found by the jury. Specifically, that the murder occurred in the course of a felony (arson), and that the appellant, in the course of committing the murder, caused a grave risk of death to another person in addition to the decedents (in setting the fire the appellant exposed his sister, Joan Pierce, to a grave risk of death). 42 Pa.C.S. § 9711(d)(6) and (d)(7).

In addition, after reviewing the information compiled by our Administrative Office in accordance with the requirements set forth in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we do not find the sentence imposed upon the appellant to be disproportionate to the sentence imposed upon defendants in similar cases. Accordingly, the judgment of sentence of death must be affirmed.[10]

10. The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Court to the Governor. 42 Pa.C.S. § 9711(i).

LARSEN, J., did not participate in the decision of this matter.

MONTEMURO, J., was an appointed justice of the court at the time of argument.*

---

\* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.