J-S24024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TRENTON ROSS BILAK | : | |
| | : | |
| Appellant | : | No. 186 WDA 2021 |

Appeal from the PCRA Order Entered January 12, 2021
In the Court of Common Pleas of Blair County
Criminal Division at No(s):  CP-07-CR-0001191-2017

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED:  December 2, 2021**

Appellant, Trenton Ross Bilak, appeals from the order entered in the Blair County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth the underlying facts as follows:

> Appellant's convictions stem from an incident that occurred in Greenfield Township, Pennsylvania on April 14, 2017, at about 4:00 a.m.  Appellant, while operating an all-terrain vehicle (ATV), caused the death of 18 year-old Mikayla Focht.  On the night of April 13, 2017, Appellant and a group of about 15-20 others, nearly all teenagers, gathered on a wooded property for a bonfire party, which had been arranged by Jacob Helsel.  Alcohol was served and Appellant, who was 21 years old at the time, was drinking beer.  The property had a cabin within one-half mile of the bonfire.  At some point in the early morning hours of April 14, [2017,] about 10 of the attendees moved from the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

bonfire to the cabin, where many planned to spend the night. Several people observed Helsel inappropriately touching Focht inside the cabin; they tried to separate Helsel from her. One person left the cabin and went to the bonfire, where Appellant heard what was happening at the cabin. Appellant, who had arrived at the party on his ATV, drove it to the cabin. When he arrived, he ordered everyone out of the cabin. Appellant and Helsel talked alone for several minutes. Appellant said he was going to take Focht home, but when an attendee objected, Appellant threatened to pull a gun on anyone who had a problem with his taking Focht home. Appellant, Focht, and Helsel then left the property.

Appellant drove his ATV with Focht on the back, while Helsel followed behind driving his Jeep, eventually making their way to Knob Road. Knob Road is a local highway with a speed limit of 45 miles per hour and ATVs are not permitted to operate on it. Appellant was traveling at an excessive speed of at least 56 to 62 miles per hour. Shortly after 4:00 a.m., Appellant struck two deer with his ATV, catapulting Focht more than 200 feet off of the vehicle and onto the roadway. Focht died instantly; Appellant was not seriously injured. Helsel, who was following behind in his Jeep, swerved to avoid hitting Appellant or Focht in the roadway, lost control, and ran over Focht's body with his Jeep before crashing it into a pole. Appellant and Helsel did not know whether Focht was still alive, did not render or call for aid, and left the scene driving their respective vehicles.

At least two witnesses heard the crash from their homes, but they believed someone had struck a deer, which was common on that stretch of road. When they saw vehicles leaving the scene, they returned to bed. Over two hours later, at about 6:10 a.m., a witness who was driving to work came upon Focht's body in the roadway. She immediately called 911 from a neighboring house, and then returned to the roadway to position her vehicle in such a way that it would protect Focht's body from oncoming traffic. Shortly after, Appellant and Helsel drove past the scene in Appellant's red truck, but only after the witness flagged the truck down did Appellant stop. At some point, someone at the scene, presumably Appellant or Helsel, retrieved vehicle parts from where the Jeep had crashed into the pole earlier that morning, and put them in the back of Appellant's truck.

- 2 -

> While at the scene, Appellant did not offer any information to emergency responders or others about his involvement in the accident.
>
> During the approximately two hours between the accident and 911 call, Appellant and Helsel made several stops. First, they went to a friend's house located nearby. The friend and another individual who was at the home told Appellant and Helsel to call 911, but they never did. Appellant hid his ATV behind an out-building on the friend's property. At some point, Appellant changed his clothes and got his red truck. Next, he drove to property owned by Helsel's relatives, where Helsel had driven and concealed from view his Jeep. At the time of the accident, Appellant had pending driving while intoxicated (DUI) charges and had been released on bail.

*Commonwealth v. Bilak*, No. 1456 WDA 2018, 2019 WL 2184977, at *1-2 (Pa.Super. May 21, 2019) (unpublished memorandum).

Appellant filed an omnibus pretrial motion on October 25, 2017. At a pretrial hearing on February 1, 2018, the Commonwealth withdrew three charges relating to DUI offenses. On June 15, 2018, Karen Kuebler, Esquire represented Appellant when he entered an open guilty plea to accidents involving death of personal injury, homicide by vehicle, tampering with or fabricating physical evidence, and reckless driving, in exchange for the Commonwealth's withdrawal of fifteen remaining charges. The court sentenced Appellant on September 11, 2018, to 5 to 10 years' incarceration on the accidents involving death or personal injury count, 3½ to 7 years' incarceration on the homicide by vehicle count, and 2 years' probation on the tampering with or fabricating physical evidence count, with all sentences to run consecutively, and imposed a $200 fine on the reckless driving count. On

September 19, 2018, Appellant timely filed a post-sentence motion, which the court denied on September 24, 2018. On May 21, 2019, this Court affirmed his judgment of sentence. *See Bilak, supra*. Appellant did not file a petition for allowance of appeal.

On May 15, 2020, Appellant timely filed a PCRA petition. The court held an evidentiary hearing on October 13, 2020. The court issued an order denying Appellant's PCRA petition on January 12, 2021. On February 5, 2021, Appellant timely filed his notice of appeal. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on February 22, 2021, and Appellant timely complied.

Appellant raises the following issues for our review:

> Is [Appellant] entitled to relief under the PCRA statute and did the PCRA Court err in denying the Petitioner relief?
>
> Is [Appellant] eligible for relief due to ineffective assistance of counsel which, in the circumstances of this particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?
>
> Is [Appellant] eligible for relief due to an unknowing, involuntary or otherwise, unintelligent plea?
>
> Did Attorney Manchester's actions and/or inaction(s) lack any objectively reasonable basis designed to effectuate his client's interest and has [Appellant] suffered prejudice to the effect that there was a reasonable probability of a different outcome if not for counsel's error(s)?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to

examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. **Commonwealth v. Abu-Jamal**, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Commonwealth v. Johnson**, 600 Pa. 329, 356-357, 966 A.2d 523, 539 (2009).

Notwithstanding Appellant's statement of four questions presented, he essentially raises only two claims. In his first issue, Appellant argues plea counsel inaccurately advised him of the legal requirements and meaning of the causation element for homicide by vehicle. Appellant contends that he would not have pled guilty but for counsel's alleged inaccurate advice. Appellant insists that reasonable doubt existed whether Appellant was the actual and legal cause of the decedent's death. Appellant further claims that

his expert's report by Dr. Vey, which plea counsel had available to him prior to his plea, establishes a genuine issue of material fact as to the element of causation. Appellant concludes that his own PCRA hearing testimony demonstrates that his guilty plea was unknowing, unintelligent, and involuntary due to counsel's improper advice. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). To prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id.*** ***See also Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 34, 84 A.3d 294, 312 (2014) (quoting ***Commonwealth v. Ali***, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the…test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met."

*Commonwealth v. Steele*, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (internal citations and quotation marks omitted).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v.*

*Moser*, 921 A.2d 526, 531 (Pa.Super. 2007) (internal citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* Pennsylvania law does not require the defendant to "be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." *Id*. at 528-29.

A guilty plea will be deemed valid if the record demonstrates the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa.Super. 2006). A defendant is presumed to be aware of what he is doing when he enters a guilty plea, and the defendant bears the burden to prove otherwise. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.*

The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges*, 789 A.2d 764, 765 (Pa.Super.

- 8 -

2002) (citing Pa.R.Crim.P. 590). Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the judge is not bound by the terms of the agreement unless he accepts the agreement. ***Commonwealth v. Watson***, 835 A.2d 786, 796-97 (Pa.Super. 2003). Nevertheless, "nothing in [Rule 590] would preclude the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings. This written colloquy would have to be supplemented by some on-the-record oral examination." Pa.R.Crim.P. 590, *Comment*.

Instantly, Appellant engaged in a thorough guilty plea colloquy fully communicating his decision to plead guilty at the plea hearing on June 15, 2018. Appellant acknowledged the voluntariness of his plea, his responsibility for the charged crimes, and his understanding of the maximum penalty and restitution required for the offenses to which he pled guilty. (***See*** N.T. Guilty Plea Hearing, 6/15/18, at 3-8). Appellant also executed a written guilty plea colloquy on the same day in which he recognized the rights he relinquished by pleading guilty, including his right to a trial by judge or jury, his right to ensure the Commonwealth met its burden of proof, and his limited appeal rights. (***Id.*** at 3). Notably, in both the oral and written colloquies, Appellant made clear that no one promised him anything in exchange for his plea. (***See***

Guilty Plea Colloquy, 6/15/18, at 8). The colloquies demonstrate Appellant's guilty plea was knowing, intelligent, and voluntary. *See Rush, supra*.

Further, the court explained its reasoning for finding Appellant's guilty plea was voluntarily, knowingly and intelligently entered as follows:

> [Appellant]'s written guilty plea colloquy indicates that the elements of the charges to which he pled were explained to [Appellant] prior to the entry of his guilty pleas.
>
> [Appellant]'s own testimony at the October 13, 2020 hearing indicates that [Appellant] was aware of the choices he had in this case; 1) accept the offer of 5-10 years from the Commonwealth; 2) plead open; or 3) go to trial. The record demonstrates that [Appellant] knew the potential risks and benefits of each of these options.
>
> [Appellant] knew that accepting the 5-10 year offer from the Commonwealth included pleas of guilty to all 19 charges in the Criminal Information. [Appellant] knew that pleading open required pleas of guilty to only 4 charges. [Appellant] knew of the existence of Dr. Vey's report containing evidence that [Appellant] was not unequivocally the cause of the victim's death. [Appellant] confirmed that he understood the elements of the crime of [h]omicide by [v]ehicle through his written guilty plea colloquy.
>
> [Appellant] strategically chose to plead open to the charges and to accept being the actual cause of the decedent's death "in hopes that [he] might get better than 5 to 10."
>
> It was not the fact that [Appellant] misunderstood the causation element of the [h]omicide by [v]ehicle charge which caused him to plead guilty to that charge, but the hope that he would receive a lighter sentence than the 5-10 year offer made to him by the Commonwealth. The fact that [Appellant] did not receive the sentence that he hoped for does not negate the fact that he made a knowing, voluntary, intelligent choice based upon the totality of the circumstances.

\* \* \*

- 10 -

As supported by his above testimony from the PCRA evidentiary hearing, Dr. Vey was unable to rule out that the sole cause of Ms. Focht's death was her impacting the ground after being ejected from the ATV being operated by [Appellant]. The Commonwealth's expert who performed the autopsy on Ms. Focht, Dr. Ashley Zezulak, concluded that such impact was the sole cause of death. Thus, there was a factual basis from which a jury could determine that [Appellant] was guilty of [h]omicide by [v]ehicle. Such factual basis certainly supports [Appellant]'s plea of guilty.

(PCRA Court Opinion, filed January 12, 2021, at 10-12) (internal citations omitted). The record supports the court's analysis. ***See Conway, supra***.

We also observe that Appellant called Brian Manchester, Esquire to testify at the PCRA hearing. (***See*** N.T. PCRA Hearing, 10/13/20, at 6). Notably, Attorney Manchester did not appear at Appellant's guilty plea; instead, his associate, Attorney Keubler, appeared and represented Appellant at his guilty plea hearing. (***Id.*** at 14). Nevertheless, Appellant did not call Attorney Keubler to testify at the PCRA hearing. Although Appellant insists that he would not have pled guilty had counsel correctly advised him of the elements of the crime to which he was pleading guilty, the PCRA court found Appellant's testimony incredible. (***See*** PCRA Court Opinion, filed April 5, 2021, at 12). We are bound by that credibility determination. ***See Johnson, supra***.

Further, Appellant's claim is belied by the guilty plea colloquy. Appellant completed and signed an extensive written guilty plea colloquy, containing the following questions and answers:

> 16a. Has your lawyer explained to you the nature of those charges to which you are pleading guilty?  Yes
>
> 16b. Has your lawyer explained to you the **elements** of the criminal offenses to which you are pleading guilty?  Yes.

(Guilty Plea Colloquy at 5) (emphasis added).  Appellant is bound by the statements he made in the written and oral plea colloquies.  ***See Pollard, supra***.  Likewise, Appellant testified at the PCRA hearing that he "accepted the guilty plea where [he] did take responsibility for [the victim's] death as the actual cause" of her death.  (***See*** N.T. PCRA Hearing at 57).  Moreover, plea counsel, Attorney Kuebler, signed and certified that she reviewed the entire colloquy with Appellant and Appellant understood the terms of the colloquy.  (***See*** Guilty Plea Colloquy at 11).  Based upon the foregoing, we cannot agree with Appellant that his plea was unknowingly and involuntarily entered, and his related ineffectiveness claim lacks arguable merit.  ***See Kimball, supra***.

In Appellant's second issue, he argues counsel was ineffective for advising him to plead open rather than accepting the Commonwealth's 5-10 year sentence offer.  Appellant alleges that counsel lacked a reasonable basis to believe that Appellant could receive a sentence lower than the 5-10 year offer.  Appellant claims that he suffered prejudice by accepting counsel's advice, and a reasonable probability exists that a different outcome would have occurred had he not followed this advice.  Appellant concludes this Court must grant him appropriate relief.  We disagree.

Instantly, Attorney Manchester testified that, based upon his years of experience practicing criminal law and his knowledge of the mitigating evidence in this case, he thought Appellant could do better than the Commonwealth's 5-10 year offer. Attorney Manchester testified that he thought Appellant could have received a sentence as low as three years if the court ran his sentences concurrently. (*See* N.T. PCRA Hearing at 22). Though counsel's advice ultimately proved to be incorrect, it did not rise to the level of ineffectiveness where both counsel and Appellant testified that counsel did not promise Appellant he would receive a specific sentence if he entered an open guilty plea. Rather, the testimony at the PCRA hearing established that counsel and Appellant had multiple discussions regarding the Commonwealth's plea offer, and Appellant understood the pros and cons of rejecting the offer and the risks involved with that decision. (*Id.* at 52, 54, 62).

Appellant admitted at the PCRA hearing that he received a benefit from the Commonwealth by entering an open plea because it reduced the total number of charges he faced from nineteen to four. (*Id.* at 51). Specifically, Appellant stated he accepted the open plea in the hopes that it would demonstrate to the court Appellant's desire to take responsibility for his actions and show the court his remorsefulness. (*Id.*) Further, Appellant explained his reason for pleading open in hopes that the court would be lenient and sentence him to less than 5-10 years. (*Id.*) Appellant admitted that he

knew the court could impose consecutive sentences. (**Id.** at 54, 62).

Further, at the plea hearing, Attorney Kuebler indicated that "[t]here have been extensive discussions with [Appellant] regarding the potential sentences." (N.T. Guilty Plea Hearing at 9). Appellant's guilty plea colloquy also establishes that Appellant was aware that the length of his potential sentence could be as high as 19 years' incarceration. (Guilty Plea Colloquy at 5). Under these circumstances, we cannot say counsel was ineffective for advising Appellant to plead guilty. **See Kimball, supra**. Based upon the foregoing, the record supports the PCRA court's denial of relief. **See Conway, supra**; **Boyd, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2021