J-A13043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN ANTHONY VEGA | : | |
| | : | |
| Appellant | : | No. 2004 EDA 2021 |

Appeal from the PCRA Order Entered September 3, 2021
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001177-2009

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 3, 2022**

Appellant, John Anthony Vega, appeals from the order entered in the Lehigh County Court of Common Pleas, which denied his petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The facts and procedural history of this case are as follows. On November 9, 2008, Marguerite MacBurney, a 77-year-old woman, left her home to take her dog for a walk, leaving her back door unlocked as she went. When she returned home, she saw something move in her bedroom window. When she entered her bedroom, she noticed that her underwear were strewn around, and as she turned to run out of the house, Appellant tackled her. He attempted to place her in handcuffs but was unable to do so. Appellant then

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

forced Mrs. MacBurney toward the sofa, ripped off her pants and underwear and forced something into her vagina. Mrs. MacBurney cried out "this is like raping your mother" and Appellant stopped and fled. (N.T. Trial, 8/7/12, at 73). Mrs. MacBurney then took a shower and called the police. She was taken to the hospital where she remained under care for a week for extensive injuries to her bowel and sphincter muscles. Police later recovered a glove from Mrs. MacBurney's living room which contained Appellant's DNA.

The case proceeded to trial on August 7, 2012.[2] At trial, Melissa Ballas, Appellant's girlfriend, provided alibi testimony, stating that Appellant was in her home at the time of the attack. (N.T. Trial, 8/9/12, at 211-14). Allison Leech,[3] Ms. Ballas's roommate, testified that Appellant had a bushy beard at the time of the attack. The court precluded Ms. Leech from offering alibi testimony as Appellant had not identified her as an alibi witness.[4]

On August 10, 2012, the jury convicted Appellant of aggravated assault, attempted rape, involuntary deviate sexual intercourse, burglary, and

---

[2] Appellant originally entered a guilty plea on November 15, 2010. However, he thereafter filed a petition to withdraw the guilty plea, which the court granted on August 23, 2011. The case was then continued several times after counsel withdrew and newly appointed counsel was granted time to prepare for trial.

[3] Ms. Leech remarried and is now named Allison Hoffman; however, we continue to refer to her by her prior name for continuity in the record.

[4] The notice of possible alibi defense filed on June 8, 2009, by defense counsel identified only Ms. Ballas as a potential alibi witness.

aggravated indecent assault. On December 17, 2012, the court sentenced

Appellant to an aggregate sentence of 30 to 64 years' imprisonment.

The PCRA court summarized some of the following procedural history of

the case as follows:

> The Superior Court affirmed Appellant's judgment of sentence on June 30, 2014. *See Commonwealth v. Vega*, [No.] 1391 EDA 2013 [unpublished memorandum] (Pa.Super. [filed] June 30, 2014). Appellant filed an [allocator] petition to the Pennsylvania Supreme Court on July 14, 2014, which was denied on December 17, 2014. Appellant subsequently filed a *pro se* PCRA petition on December 16, 2015. The [PCRA c]ourt appointed Matthew Rapa, Esq.[,] as PCRA counsel on December 17, 2015. On July 12, 2016, Attorney Rapa filed a Motion to Withdraw as Counsel. The [c]ourt granted that motion after a hearing on September 20, 2016. On September 26, 2016, Jack McMahon, Esq.[,] entered an appearance on Appellant's behalf. On October 26, 2016, the [c]ourt issued a Notice of Intent to Dismiss the PCRA petition. Attorney McMahon filed a response on November 10, 2016. Following numerous continuances, the [c]ourt heard argument on the issue of dismissal without an evidentiary hearing on November 26, 2019. The [c]ourt subsequently scheduled a hearing on the merits, but that hearing was postponed numerous times due to COVID-19.
>
> During the pendency of this matter, Appellant subpoenaed Allison [Leech] to appear as a witness. Ms. [Leech] retained counsel who filed a Motion to Quash the Subpoena on October 15, 202[0]. The [c]ourt conducted a hearing on that motion on December 4, 2020 and denied it on December 10, 2020.
>
> On January 21, 2021 [and May 7, 2021], the [PCRA c]ourt held a hearing on Appellant's PCRA [petition]. The evidentiary hearings in the within matter focused on two issues which were preserved by counsel's response to the Court's Notice of Intent to Dismiss. First, Appellant alleged trial counsel was ineffective by failing to call Allison [Leech] as an alibi witness. Second, Appellant claimed counsel was

> ineffective by failing to cross-examine a police witness about handwritten notes concerning conversations with Melissa Ballas, the alibi witness who testified during Appellant's trial….

(PCRA Court Opinion, 10/28/21, at 2-4) (footnote omitted).

At the PCRA evidentiary hearing, Appellant presented the testimony of Ms. Leech. Ms. Leech did not independently remember the events of that morning, so counsel attempted to help refresh her recollection with a statement that Ms. Leech had typed on March 4, 2013. She typed the statement at the suggestion of either defense counsel or Ms. Ballas, and, in it, recalled what she remembered from the morning of November 9, 2008. Ms. Leech had the statement notarized. At the hearing, the Commonwealth objected to admissibility of the written 2013 statement into evidence. The court sustained the objection, concluding that it was not a recorded recollection because it was not made when the issue at hand was fresh in the witness' memory. (N.T. PCRA Hearing, 1/21/21, at 16). Nevertheless, the court permitted Ms. Leech to review the statement as a basis for refreshing her recollection. (*Id.* at 28). Ms. Leech explained that without the statement she had no independent recollection of that morning.

PCRA counsel then attempted to introduce the December 19, 2008 police report authored by Trooper Arthur Johnson after he interviewed Ms. Leech. The court permitted counsel to introduce the police report for the purpose of evaluating the credibility of Ms. Leech's testimony. Trooper Johnson explained that Ms. Leech had told him that Appellant was not in the

apartment on the night of Saturday November 8, 2008, but "did come to the apartment sometime late in the morning on Sunday, November 9th, but she did not recall the exact time." (N.T. PCRA Hearing, 5/7/21, at 18-19).

Appellant next called Trooper Raymond Judge as a witness. Trooper Judge testified that he assisted Trooper Johnson in investigating the attack on Mrs. MacBurney. Trooper Judge conducted the initial interviews of Ms. Ballas and testified as to the content of those interviews at trial. At trial, Trooper Judge had testified that Ms. Ballas did not disclose during her interviews with him that Appellant came home at 3:00 o'clock in the morning, in contrast to her trial testimony. At the PCRA hearing, Appellant argued trial counsel was ineffective for failing to cross-examine the trooper at trial with his interview notes in which Trooper Judge wrote: "Sun Nov. 9th I [Ms. Ballas] woke up and told [Appellant] I should be at work."

On September 2, 2021, the PCRA court denied PCRA relief. Appellant timely filed a notice of appeal on September 28, 2021. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on October 18, 2021.

Appellant raises two issues on appeal:

> A. Whether the [c]ourt erred in denying PCRA relief for ineffective assistance of trial counsel for not filing an alibi notice for witness Allison [Leech] and being prevented from developing such alibi in front of the jury for failure to file such notice. PCRA evidentiary hearing established the

importance and value of presenting such notice and testimony?

B. Whether [t]he [c]ourt erred in denying PCRA claim of ineffectiveness for failure to cross examine Trooper Judge on handwritten notes that contradicted the trial testimony of the Trooper as to the statements made by Melissa Ballas?

(Appellant's Brief at 5).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Howard**, 249 A.3d 1229 (Pa.Super. 2021). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021).

In his first issue, Appellant contends that trial counsel rendered ineffective assistance by failing to call Ms. Leech as an alibi witness who would have provided additional details about Appellant's whereabouts on Sunday, November 9, 2008, and would have corroborated the testimony of Ms. Ballas. Appellant emphasizes that the court prevented Ms. Leech from offering alibi testimony at trial because trial counsel did not file the required alibi notice. Appellant posits that if the required notice had been filed, Ms. Leech would have offered alibi testimony, notwithstanding the fact that her 2008 statement

to police did not provide a specific timeframe for when she saw Appellant on the morning in question. Appellant insists the court should have considered both Ms. Leech's 2008 statement to police as well as her 2013 notarized statement for a full and accurate picture of what happened on the morning of November 9th. He claims that Ms. Leech was an alibi witness known to defense counsel and available to testify, so counsel's decision not to file a notice of alibi for Ms. Leech had no reasonable basis. Appellant concludes that he was prejudiced because he was unable to present a corroborated alibi defense. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Kimball**, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Williams, supra**.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be

found ineffective for failing to pursue a baseless or meritless claim."

***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

"To show prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Commonwealth v. Johnson***, 635 Pa. 665, 710, 139 A.3d 1257, 1284 (2016) (quoting ***Commonwealth v. Baumhammers***, 625 Pa. 354, 92 A.3d 708, 725 (2014)).

"A failure to call a witness is not *per se* ineffective assistance of counsel for such [a] decision usually involves matters of trial strategy." ***Commonwealth v. Matias***, 63 A.3d 807, 811 (Pa.Super. 2013), *appeal denied*, 621 Pa. 671, 74 A.3d 1030 (2013) (citation omitted). To establish ineffectiveness for failing to call a potential witness to testify at trial, the petitioner must prove that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have

denied the defendant a fair trial

***Id.*** at 810-11 (citations omitted).

"Generally, 'in order to constitute an alibi, evidence must preclude the possibility of a defendant's presence at the scene of the crime.... [I]ts relevance depends on precluding the possibility that the defendant committed the offense; otherwise it is not an alibi.'" ***Johnson, supra*** at 713, 139 A.3d at 1285–86 (quoting ***Commonwealth v. Jones***, 529 Pa. 149, 602 A.2d 820, 822 (1992)).

Instantly, Appellant's theory of the case was that he could not have been the assailant who raped Mrs. MacBurney because he was at Ms. Ballas's and Ms. Leech's house at the time of the assault.  Trial counsel called Ms. Ballas, who testified that Appellant was with her in the morning when the attack occurred.  The court precluded Ms. Leech from offering alibi testimony because trial counsel had failed to update the notice of an alibi defense to include Ms. Leech's name.

Nevertheless, Appellant has failed to prove that Ms. Leech would have been able to offer alibi testimony.  At the time of the PCRA hearing, Ms. Leech had no independent recollection of the events from the morning at issue. Trooper Johnson testified at the hearing that a month after the rape, Ms. Leech told him that she saw Appellant at her home late in the morning on November 9, 2008, which she indicated meant after 9:00 a.m.  The attack on Mrs. MacBurney, however, occurred between 8:00 a.m. and 8:30 a.m.  Thus,

Appellant cannot demonstrate that Ms. Leech had any alibi testimony to offer to aid Appellant's defense. **See *Johnson, supra***.

Moreover, the Commonwealth presented overwhelming evidence that Appellant was the assailant. The evidence admitted at trial established that Mrs. MacBurney was violently raped by an assailant who had broken into her house between 8:00 a.m. and 8:30 a.m, and scattered her underwear throughout the house. The assailant attempted to handcuff Mrs. MacBurney; however, she successfully resisted. Police recovered a glove that was used to rape Mrs. MacBurney from the floor of her living room, which contained Appellant's DNA. The Commonwealth also introduced evidence that Appellant resided part of the time with his mother who lived about 4 miles from Mrs. MacBurney's home.

Additionally, prior to the attack, a witness saw a green vehicle in the parking lot of a store close to Mrs. MacBurney's home, and a Hispanic or light skinned black man inside the vehicle. The witness saw the car again at 8:10 a.m. on the morning in question; however, she did not see an occupant. Appellant had a green Honda registered in his name at the time of the attack.

Further, after Appellant's arrest, officers intercepted several phone conversations from the prison. In one call, Appellant asked Ms. Ballas to go to his mom's house and get a green bag from the shed and "make it disappear." (N.T. Trial, 8/9/12, at 222). Based on those calls, officers obtained a search warrant for the property. There, they found a green bag in

a shed, which contained a pair of handcuffs, and, after searching his green Honda, police found a handcuff key in the glove compartment.

The Commonwealth also introduced evidence of an attack on another 77-year-old woman in a nearby town. There, the assailant broke into the woman's house, scattered underwear, and attempted to rape her, but was dissuaded. Several months later, the individual returned wearing a mask and gloves and expressed his intent to finish what he started. The attack was thwarted by the victim's roommate. Appellant's palm print was found on the windowsill of that victim's home.

Further, during cross-examination of Ms. Ballas, the district attorney pointed out that one of the intercepted prison phone calls was a conversation between Appellant and Ms. Ballas where Appellant said to Ms. Ballas, "listen, listen to me, on the morning of the 9th, that's when they're saying I did this, the morning of the 9th" and Ms. Ballas responded, "I know, where were you? I don't know what to say." (N.T. Trial, 8/9/12, at 221-22).

On this record, we cannot say that Appellant suffered prejudice because of counsel's failure to call Ms. Leech as an alibi witness. *See Johnson, supra*. Therefore, we conclude that trial counsel did not render ineffective assistance, and Appellant is not entitled to relief on this issue. *See Williams, supra*.

In his second issue, Appellant claims that trial counsel was ineffective for failing to cross-examine Trooper Judge on the handwritten notes, which contradicted his testimony at trial. Specifically, Trooper Judge testified at trial

that Ms. Ballas never told him that Appellant came home at 3:00 a.m. and was there when she woke up. However, in his handwritten notes from the second interview with Ms. Ballas, Trooper Judge wrote: "Sun Nov. 9th I woke up and told [Appellant] I should be at work." Appellant claims that he was prejudiced by this failure because Trooper Judge's testimony was used at trial to impeach Appellant's alibi defense, and, if the jury had heard about what Trooper Judge wrote in the notes, the jurors may have been inclined to believe Ms. Ballas. (Appellant's Brief at 16). We disagree.

Here, after Ms. Ballas's testimony at trial, the prosecutor recalled Trooper Judge. Trooper Judge testified, *inter alia*, that when he interviewed Ms. Ballas she never told him that Appellant came home at 3:00 a.m. and was there when she woke up. (N.T. Trial, 8/9/12, at 240). Defense counsel cross-examined Trooper Judge, but counsel did not ask him about this particular statement. At the PCRA hearing, Trooper Judge testified that his notes indicated that Ms. Ballas told him that on Sunday November 9th, she woke up and told Appellant that she should be at work. Significantly, neither Trooper Judge's independent recollection nor his notes reflected that Ms. Ballas ever told him that Appellant had come home at 3:00 a.m.

Upon review, we are unconvinced that Appellant suffered prejudice here. While Trooper Judge's notes indicated that Ms. Ballas told him Appellant was present when she woke up and realized that she should have been at work, Ms. Ballas did not give the trooper a time for when this alleged

statement occurred. In other words, the notes did not corroborate Ms. Ballas' testimony that Appellant was with her when the assault occurred, because the trooper's notes did not indicate the time Ms. Ballas woke up on the morning in question when Appellant was allegedly with Ms. Ballas.

Given the extensive evidence of his guilt, Appellant has failed to establish that but for counsel's error, there is a reasonable probability that the outcome of his trial would have been different. Therefore, counsel did not render ineffective assistance. **See Kimball, supra**. Appellant's second issue merits no relief, and the court properly denied PCRA relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2022