J-S36022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GABRIEL RIZZARIO | : | |
| | : | |
| Appellant | : | No. 2347 EDA 2020 |

Appeal from the PCRA Order Entered November 30, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-1301042-2006

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                              **FILED MARCH 07, 2022**

Appellant, Gabriel Rizzario, appeals *pro se* and *nunc pro tunc* from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth the relevant facts and procedural history of this case as follows.

> Robert Bullock, the surviving victim, testified that on June 30, 2005 at 11:55 P.M. he walked to the corner of Auburn and Boudinot to meet his friend Tattoo, Eddie Almodovar. Mr. Almodovar was riding a bike and was engaged in an argument with his girlfriend Yolanda when Mr. Bullock approached the corner.  There were approximately ten to fifteen people out on the street.  There were a number of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

people sitting and standing around 2823 Boudinot including murder victim, Colleak Cottom, an 18 year old black male.

The witness further testified that he saw Appellant whom he knows as Shorty come from between two parked cars as Mr. Almodovar rode down the Street. Appellant was a friend of Mr. Almodovar. Mr. Bullock had only met Appellant once or twice on other occasions. Mr. Bullock turned and began to walk down the street. He then remembered being shot in the back of the head and went blank. Before the shooting, the only person behind him was Appellant. The next thing Mr. Bullock remembered was sitting in a car bench seat beside 2823 Boudinot. Mr. Bullock walked to Kensington and Summerset where police were flagged down and he was taken to Temple Hospital. Mr. Bullock suffered five gunshot wounds, four to his face including a bullet lodged under his scalp and a shot in the arm which caused nerve damage. He was treated and released from Temple Hospital in one day. The bullet remains lodged in his head. Mr. Bullock has nerve damage in his arm which continues.

Mr. Almodovar testified that after arguing with his ex-girlfriend Yolanda he rode up and down the street and then stopped at the corner of Boudinot and Auburn to speak with his friend Mr. Bullock. While on his bike next to Mr. Bullock he heard two shots, turned and saw Appellant whom he has known for at least two months with a silver revolver in his hand shoot Mr. Bullock and then repeatedly shoot into the crowd. He saw Appellant shoot Mr. Cottom. The ambulance came quickly and took Mr. Cottom to the hospital. Mr. Almodovar testified that he did not know where Mr. Bullock had gone. Mr. Almodovar further acknowledged that at the preliminary hearing he testified there were two men who shot guns. Mr. Almodovar also testified at the preliminary hearing that he did not see Appellant shoot. At trial Mr. Almodovar explained that he did so because of threats made to him in prison.

*Commonwealth v. Rizzario*, No. 1098 EDA 2008, unpublished

memorandum at 1-2 (Pa.Super. filed July 21, 2009) (citation omitted), *appeal*

*denied*, 606 Pa. 648, 992 A.2d 888 (2010).

On September 12, 2007, a jury convicted Appellant of third-degree murder, aggravated assault, possession of a firearm without a license, and possessing instruments of crime. On December 5, 2007, the court sentenced Appellant to an aggregate term of 21 to 42 years of imprisonment. This Court affirmed the judgment of sentence on July 21, 2009, and our Supreme Court denied Appellant's petition for allowance of appeal on April 7, 2010. *See id.*

On August 10, 2010, Appellant filed a timely first PCRA petition *pro se*. The court appointed counsel, who filed a ***Turner***/***Finley***[2] letter and motion to withdraw as counsel on October 5, 2011. The court subsequently issued notice of its intent to dismiss the petition without a hearing per Pa.R.Crim.P. 907, and Appellant filed a *pro se* response to the notice. The PCRA court denied PCRA relief on November 30, 2011, and let counsel withdraw.

Following a subsequent PCRA petition seeking reinstatement of his appeal rights *nunc pro tunc*, on August 24, 2020, the PCRA court granted Appellant leave to appeal *nunc pro tunc* from the November 30, 2011 order denying his first PCRA petition. On September 4, 2020, Appellant timely filed a *pro se* notice of appeal *nunc pro tunc*. On December 28, 2020, the court ordered Appellant to file a concise statement of errors per Pa.R.A.P. 1925(b). Following the grant of an extension of time, Appellant filed his concise statement on January 26, 2021. Appellant filed a supplemental concise

---

[2] ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

statement on May 18, 2021.

Appellant raises five issues for our review:

> Whether Robert Bullock and Eddie Almodovar's testimonies at [the] preliminary hearing [were] hearsay and insufficient to establish a *prima facie* case against Appellant.
>
> Whether trial counsel was ineffective for failure to object to [the] prosecutor's statement that Appellant changed appearance in support of consciousness of guilt.
>
> Whether trial counsel was ineffective for failure to object to [the] prosecutor's closing argument on presumption of innocence.
>
> Whether trial counsel was ineffective for failure to object to [the] prosecutor's inflammatory statement describing Appellant as judge, jury and executioner when the evidence doesn't support such statement.
>
> Whether trial counsel was ineffective for failure to object to photos of [the] autopsy of Mr. Colleak Cottom and injuries to Mr. Robert Bullock as inflammatory.

(Appellant's Brief at 3) (unnecessary capitalization omitted).

This Court has explained:

> Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. [W]e review the court's legal conclusions *de novo*.

***Commonwealth v. Washington***, ___ A.3d ___, 2022 PA Super 18, *5 (filed Feb. 1, 2022) (*en banc*) (citations and quotation marks omitted).

In his first issue, Appellant argues that the Commonwealth did not establish a *prima facie* case at his preliminary hearing. Appellant asserts that

- 4 -

the Commonwealth relied solely on hearsay evidence to establish the elements of the offenses for which he was charged, which was insufficient to establish a *prima facie* case under **Commonwealth v. McClelland**, ___ Pa. ___, 233 A.3d 717 (2020). Appellant concludes that he is entitled to relief on appeal. We disagree.

Preliminarily, we observe the general rule that "any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 250 A.3d 468 (2021) (citing **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)). **See also** Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in concise statement and/or not raised in accordance with rule are waived).

Here, Appellant did not include his first issue on appeal in either his initial or supplemental concise statements. (**See** Rule 1925(b) Statement, filed 1/26/21, and Rule 1925(b) Statement, filed 5/18/21). Accordingly, his first issue is waived for appellate review.[3] **See Bonnett, supra**.

In his remaining four issues, Appellant alleges ineffective assistance of

---

[3] Moreover, even if Appellant had not waived his claim, we note that he would not be eligible for relief under **McClelland** because any alleged defect at the preliminary hearing was cured at Appellant's jury trial. **See Commonwealth v. Rivera**, 255 A.3d 497, 503 (Pa.Super. 2021), *appeal granted on other grounds*, 494 MAL 2021, 2022 WL 536442 (Pa. Feb. 23, 2022) (stating: "the Supreme Court did not intend to extend McClelland's holding to cases such as this one, where the complained-of defect in the preliminary hearing is subsequently cured at trial").

counsel. "Pennsylvania law presumes counsel has rendered effective assistance." *Commonwealth v. Davis*, 262 A.3d 589, 595 (Pa.Super. 2021) (citation omitted). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999).

> Under the traditional ineffectiveness test, "[t]he threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit. . . ." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> > Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

> *Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> > Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

- 6 -

> is a probability sufficient to undermine confidence in the outcome. . . .
>
> ***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

***Davis, supra*** at 596.

In his second, third, and fourth issues on appeal, Appellant alleges trial counsel was ineffective for failing to object to certain portions of the prosecutor's closing argument. Appellant argues that trial counsel should have objected to the prosecutor's statement that Appellant's change of appearance demonstrated consciousness of guilt. Specifically, Appellant claims that there was no evidence that his new facial tattoo and new haircut were an attempt to deceive the court or the jury. Additionally, Appellant claims trial counsel was ineffective for failing to object to the prosecution's description of the presumption of innocence. Appellant also maintains trial counsel should have objected to the prosecutor's statement that Appellant was "the judge, the jury and the executioner." (Appellant's Brief at 10) (citing N.T. Trial, 9/10/07, at 47). He argues that the prosecutor's statement was not a fair deduction or inference based on the evidence presented at trial, which Appellant claims did not establish that he was the shooter. Appellant concludes trial counsel's failure to object in these regards constitutes ineffectiveness and warrants a new trial. We disagree.

It is well settled that:

> The prosecutor is allowed to vigorously argue [her] case so long as [her] comments are supported by the evidence or constitute legitimate inferences arising from that evidence. In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect . . . [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Further, the allegedly improper remarks must be viewed in the context of the closing argument as a whole.

*Commonwealth v. Smith*, 604 Pa. 126, 162–63, 985 A.2d 886, 907 (2009)

(citation omitted).

Here, during closing argument, the prosecutor stated:

> Consciousness of guilt, what do we mean? Well, we mean that the defendant who has been described here over and over again in these statements as having facial hair, what did he look like; that, suddenly, he comes into court before this jury, and the facial hair which he is described repeatedly as having, described by Robert Bullock, described by Eddie Almodovar, described by Detective Marano, suddenly, he doesn't have that facial hair anymore. You can also consider that in between the time of meeting with Detective Marano and coming before you, that the defendant has gotten himself a new teardrop tattoo underneath his eye. You can consider that he changed his appearance.

(N.T. Trial, 9/10/07, at 73-74).

Noting the prosecution's leeway to address facts and draw reasonable inferences, the PCRA court found that the prosecutor was "free to point to her preferred inference drawn" from Detective Marano's testimony about the contrast in Appellant's appearance in his arrest photo and his appearance in the courtroom. (PCRA Court Opinion, filed May 6, 2021, at 6). Further, upon

review of the prosecutor's closing argument in its entirety, we cannot say that the effect of the challenged portion of the closing argument was so prejudicial as to form in the jury's minds a "fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *See Smith, supra*.

With respect to the presumption of innocence, the prosecutor explained:

> Now you hear about and the judge will instruct you on this idea of the presumption of innocence. You heard it at the beginning of trial, you will hear it at the jury instructions at the end. When we begin a criminal trial and we say that the defendant is presumed innocent, it doesn't erase what he has done. It doesn't mean that he didn't commit this killing and the attempted killing of another person. It means that we presume that he didn't, and that the Commonwealth will come forward and present its evidence to you, and in this case I have done just that.

(N.T. Trial, 9/10/07, at 45-46).

In evaluating this ineffectiveness claim, the PCRA court reasoned:

> Counsel would have no reasonable basis to object to this language. It is an accurate statement of the law. The prosecutor is correct that the presumption of innocence is not a declaration of innocence. It is an affirmation that the defendant is under no obligation to prove his innocence. It is the articulation of the settled legal principle that it is solely the burden of the Commonwealth to produce evidence of guilt beyond a reasonable doubt.

(PCRA Court Opinion at 5) (citation omitted). We agree with the PCRA court's analysis. Appellant has failed to show how the prosecutor's statement constituted an inaccurate statement of the law that would have warranted an objection from trial counsel.

- 9 -

With respect to the prosecutor's comment about Appellant being the "judge, jury and executioner," the prosecutor stated: "One question in this case may be why do you care?  It is a nighttime shooting on a drug corner. Care, ladies and gentlemen, because an 18-year-old boy died.  Care because the defendant went out there and he was the judge, the jury, and the executioner."  (N.T. Trial, 9/10/07, at 74).

The PCRA court explained that the statement "is vigorous argument with a rhetorical flourish.  Such language is allowed."  (PCRA Court Opinion at 6). We agree with the court's analysis.  **See Smith, supra**.  **See also Commonwealth v. Smallwood**, No. 538 MDA 2019 (Pa.Super. Feb. 6, 2020) (unpublished memorandum),[4] *appeal denied*, ___ Pa. ___, 249 A.3d 252 (2021) (holding that prosecutor's statement that defendant was "judge, jury, and executioner" was permissible oratorical flair).

Under these circumstances, Appellant cannot demonstrate that trial counsel was ineffective for failing to object to the challenged portions of the prosecutor's closing argument.  **See Davis, supra**.  Consequently, Appellant's second, third, and fourth issues on appeal merit no relief.

In his final issue, Appellant claims that trial counsel rendered ineffective assistance when he failed to object to the prosecutor introducing into evidence

---

[4] **See** Pa.R.A.P. 126(b) (explaining that we may rely on unpublished memorandum from this Court filed after May 1, 2019, for persuasive value).

and displaying for the jury autopsy photos of the victim's corpse.[5]  He claims that counsel should have objected to the photos because there was no basis for them and they inflamed the emotions of the jurors.  Appellant concludes counsel's error warrants a new trial.  We disagree.

The admissibility of photographic evidence is within the sound discretion of the trial court and involves a two-step process.  "First a [trial] court must determine whether the photograph is inflammatory."  **Commonwealth v. Haney**, 634 Pa. 690, 712, 131 A.3d 24, 37 (2015) (citation omitted).  "This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant."  **Commonwealth v. Funk**, 29 A.3d 28, 33 (Pa.Super. 2011) (citation omitted).  If the photograph is not inflammatory, "it may be admitted if it has relevance and can assist the jury's understanding of the facts."  **Haney, supra**.  "If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors."  **Id.**

Here, the PCRA court found that this claim lacked merit, explaining:

> The autopsy photos were introduced through the testimony of Dr. Edwin Lieberman, the medical examiner.  They

_____

[5] Although Appellant's statement of this question includes a claim that counsel also failed to object to photos of the injuries to Mr. Robert Bullock, Appellant abandoned this allegation in the argument portion of his brief.  (**See** Appellant's Brief at 3, 11).

demonstrated the nature and extent of Cottom's fatal wound. The autopsy photos were relevant to the jury's understanding of the circumstances and cause of Cottom's death. They demonstrated the medical examiner's explanation of the victim's position relative to and distance from the shooter, the trajectory of the bullet, and the presence of a wound on his knee.

. . . [T]he relevance of the evidence is apparent. There is no suggestion on the record that these exhibits were duplicative of any other evidence or that they were used for any purpose other than to educate the jury about the course of events on the night of the shooting. An objection from defense would have been unavailing.

(PCRA Court Opinion at 8-9).

Although the PCRA court did not specifically state whether the photographs were inflammatory, it proceeded as if the photographs were not inflammatory and judged whether they were relevant and assisted the jury's understanding of the facts. **See id. See also Haney, supra**. We decline to reassess the inflammatory nature of the photos.[6] We agree with the PCRA court's conclusion that the photographs were both relevant and would assist the jury's understanding of the cause and circumstances of the victim's death. Because Appellant has not proven that his underlying claim has arguable merit, he is not entitled to relief. **See Davis, supra**. Accordingly, we affirm

---

[6] Notably, Appellant did not ensure that the photographs at issue were included in the certified record. As such, this Court is unable to review them. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006).

the order denying PCRA relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*

*Prothonotary*

*Date: 3/7/2022*