J-S31045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                                      :                    PENNSYLVANIA
                                                                      :
                              v.                                      :
                                                                      :
                                                                      :
                                                                      :
JOSHUA WILLIAMS                                    :
                                                                      :
                        Appellant                         :        No. 1960 EDA 2021

Appeal from the PCRA Order Entered September 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008410-2014

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 15, 2022**

Appellant, Joshua Williams, appeals from the order entered in the Court

of Common Pleas of Philadelphia County dismissing his first petition filed

pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. 9541-9546,

after the court determined that Appellant failed to establish that plea counsel

caused him to enter an invalid guilty plea by failing to correct the trial court's

misstatement of the potential sentence he faced on the charge of first-degree

murder.  After careful review, we affirm.

At Appellant's October 5, 2015, guilty plea hearing, the factual basis for

Appellant's counseled plea was read into the record by the Commonwealth, as

follows:

> On January 1, 2013, at 2:35 a.m., police responded to a
> radio call of a shooting at 1650 Pratt Street in the city and county

---

[*] Former Justice specially assigned to the Superior Court.

of Philadelphia. Upon arrival, they discovered Tyjuan Shields suffering from a gunshot wound to the head. Shields was pronounced dead by medics on scene.

The shooting resulted from an altercation between males who were attending a house party at 1650 Pratt Street, and the Appellant's group, who were walking past the party after leaving a party located at a residence one block away. Earlier that evening, there was an altercation between the two groups at a corner bar located near both parties. At that time, Abdal Ala Real shot a gun. Real was associated with the group attending the party at 1650 Pratt Street. No one was injured and incident ended.

A short time later, an altercation occurred between two women outside the Pratt Street party. People came out of 1650 Pratt to watch just as the Appellant and his friends were walking by. Someone in the crowd yelled, "He has a gun", and everyone ran for cover. Three eyewitnesses, Timothy Scarborough, Rafie Cooper, and Fred Preston were with Appellant. They observed Appellant pull out a gun, run up the front steps to 1650 Pratt Street, and fire three shots into the house that was filled with people. The decedent was attempting to move some children to safety when he was struck in the head with a bullet. Three fired cartridge casings, two (2) bullets, and one (1) bullet jacket were recovered from the scene. All ballistics evidence came from the same weapon. No weapon was recovered.

N.T., 10/05/15, at 27-32.

At the hearing, Appellant entered a negotiated guilty plea to Third Degree Murder, 18 Pa.C.S. § 2502(c), a felony of the first degree, and Possession of an Instrument of Crime (PIC), 18 Pa.C.S. § 907, a misdemeanor of the first degree. On the same day, the trial court imposed a sentence of 20 to 40 years' incarceration.

Through newly retained counsel, Appellant filed a timely "Motion to Withdraw Guilty Plea" in which he claimed plea counsel had pressured him to

enter an allegedly involuntary plea as part of a dispute over accumulating attorney fees. On January 15, 2016, the trial court entered an order denying Appellant's motion.

Having filed no direct appeal, Appellant sought reinstatement of his direct appeal rights *nunc pro tunc* through a timely PCRA petition prepared and filed by new privately retained counsel, Appellant's third counsel in the relevant timeline.[1] On February 6, 2018, the PCRA court, with the agreement of the Commonwealth, granted the requested relief.

On direct appeal *nunc pro tunc*, Appellant claimed generally that both the trial court and plea counsel unduly influenced him to enter an involuntary guilty plea. In a concise, unpublished memorandum decision, a three-judge panel of this Court affirmed judgment of sentence, finding, *inter alia*, Appellant clearly had waived his particular challenge to the voluntariness of his plea

---

[1] Notably, as discussed *infra*, counsel's PCRA petition did not include an ineffectiveness claim alleging that plea counsel had contributed to Appellant's unintelligent and involuntary plea by failing to advise him at any point during his representation that his first-degree murder sentencing exposure consisted of a 35-year mandatory minimum and not, as the trial court misstated in its oral colloquy, a mandatory life sentence. Such an IAC claim was both ripe for consideration at this initial PCRA stage and presented what would have appeared to be Appellant's best opportunity for achieving withdrawal of his guilty plea.

Instead, it was not until nearly three years later, at the evidentiary hearing on this, Appellant's second PCRA petition (deemed his first, as it followed his unsuccessful direct appeal *nunc pro tunc*), that Appellant first alleged that plea counsel ineffectively failed to advise him accurately about the applicable mandatory minimum for first-degree murder.

because he had failed to raise it first with the trial court. Regarding Appellant's IAC claim, moreover, the panel held such a claim must await collateral attack through a PCRA petition. *See Commonwealth v. Williams*, 761 EDA 2018, unpublished memorandum, at *1 (Pa. Super. filed July 23, 2019).

On October 8, 2020, Appellant filed a timely PCRA petition raising several claims of ineffective assistance of plea counsel, and counsel was appointed. At the PCRA evidentiary hearing of August 17, 2021, Appellant asserted a new claim not raised in either his petition or at any time previously, namely, that plea counsel rendered ineffective assistance by failing to correct the trial court when it twice advised Appellant during the oral colloquy that if he elected to stand trial and the jury convicted him of first degree murder he would receive a mandatory sentence of life imprisonment. In fact, because Appellant was 17 years old at the time of the fatal shooting, the mandatory minimum sentence of imprisonment for a first degree murder conviction would have been 35 years, such that he would have been sentenced to 35 years to life imprisonment. *See* 18 Pa.C.S. § 1102.1.

Plea counsel testified that he and Appellant discussed several times prior to the guilty plea hearing that due to Appellant's juvenile status at the time of the crime he was subject to a reduced mandatory minimum sentence of 35

years to a maximum of life for first degree murder. N.T., 8/17/21, at 10.[2] It was counsel's testimony that Appellant thus understood the possible penalties, both the minimums and maximums, associated with going to trial, N.T. at 19, 20-21, and he affirmed that they revisited this topic each of the three times the Commonwealth presented a plea offer over the course of many months. N.T. at 21.

Plea counsel maintained he informed Appellant that each of the three plea offers was less than the mandatory minimum that would be imposed should Appellant be sentenced on a first degree murder conviction. N.T. at 22. Nevertheless, Appellant rejected plea offers of 25 to 50 years and 22 ½ to 50 years in the months leading up to the guilty plea hearing. N.T. at 11. When plea counsel had conveyed the Commonwealth's most recent offer of 20 to 40 years made about ten days before the hearing, Appellant, though still reluctant to plead, accepted the offer. N.T. at 12. It was plea counsel's belief that Appellant viewed this offer as a sufficient downward departure from the previous two offers, which counsel described as simply placing too much time on Appellant. N.T. at 11.

For his part, plea counsel had considered the Commonwealth's evidence against Appellant to be "overwhelming," N.T. at 11, so much so that he

---

[2] The judge who presided over both the plea hearing and the PCRA evidentiary hearing acknowledged that she was not aware during the plea that Appellant was a juvenile at the time of the shooting because he was 20 years old when the plea hearing took place. N.T. at 19.

believed a trial "win" for the defense would have been a guilty verdict on the charge of third degree murder as opposed to first degree murder. N.T. at 14. Therefore, plea counsel regarded the negotiated plea offer of third degree murder carrying a 20 to 40 year sentence to align with what he foresaw as the best possible outcome of a trial. N.T. at 14.

When confronted with the notes of testimony from Appellant's guilty plea hearing, plea counsel admitted he had "no reason" for failing to interject when the trial court twice misstated Appellant's sentencing exposure for first degree murder as a mandatory minimum of life imprisonment. N.T. at 15. Yet, plea counsel also reiterated on cross-examination that he previously explained to Appellant in their prior discussions that a 35-year minimum sentence would apply in his case, although he also conveyed to Appellant that serving out a life sentence was a possible outcome of receiving a 35 year to life sentence. N.T. at 17. He likewise denied ever telling Appellant's family that Appellant faced mandatory life without parole by choosing to go to trial. N.T. at 24.

Appellant took the stand and testified that he had met with plea counsel only two or three times before he pleaded guilty. N.T. at 27. He denied that plea counsel ever advised him of a 35 to life sentencing exposure for committing first degree murder as a juvenile, N.T. at 27, and testified, instead that plea counsel told him only that he faced life without parole if he went to trial and was found guilty of first-degree murder. N.T. at 28.

He testified that he knew nothing about a juvenile sentencing exposure at the time of his plea, and insisted that had he been properly advised, he would have opted against a plea in favor of trying his case, N.T. at 27, notwithstanding that his negotiated plea minimum sentence of 20 years was 15 years less than the 35-year mandatory minimum for first degree murder. N.T. at 35-36.

On cross-examination, Appellant admitted that plea counsel and he discussed his status as a juvenile at the time of the shooting and that plea counsel knew he was 17 at the relevant time. N.T. at 29. The Commonwealth also asked Appellant why he had not raised this ineffectiveness claim three years earlier in either his post-sentence motion or his first counseled PCRA petition. N.T. at 38. When Appellant offered a vague answer, the Commonwealth asked if it was because he knew the claim lacked merit because plea counsel had informed him of the 35-year minimum, and he therefore knew of such a minimum but still decided to take the 20 to 40-year plea offer because it represented the best alternative available to him. N.T. at 38. On redirect, Appellant answered that first PCRA counsel, alone, decided what issues to raise. N.T. at 40.

The trial court then addressed Appellant, first questioning him about his testimony that neither of the two veteran criminal defense lawyers who represented him during his guilty plea and post-sentence motion to withdraw

the plea, respectively, informed him that foregoing the negotiated plea would increase his minimum sentencing exposure from 20 years to 35 years:

**Trial Court:** So, you are saying that [Plea Counsel] didn't tell you that first degree murder was 35 years to life. He didn't tell you that?

**[Appellant]:** No, he didn't tell me that.

**Trial Court:** [Post-Sentence Motion Counsel], that lawyer, when you went to withdraw your guilty plea, [he] didn't tell you that the sentence would be 35 years to life – if the judge let you withdraw your plea, that you would be looking at 35 years, up to life? Thirty-five is the least you can get. You can get 40, 50, 60, up to life. [Post-Sentence Motion Counsel] didn't say to you, [']You know what, if you win this motion, the least you are going to get is 35 years[']? [Post-Sentence Motion Counsel] didn't tell you that?

**[Appellant]:** No, we never had a conversation like that, no, no. He didn't tell me that.

**Trial Court:** So you paid him money to file a petition to withdraw your motion and he never discussed what the outcome could be if the judge actually granted your motion? He never told you that?

**[Appellant]:** No.

N.T. at 46-47.

At the conclusion of oral argument, the PCRA court addressed what it viewed as Appellant's lack of credible testimony that it was not until three years after his guilty plea that he first learned that a 35 year mandatory minimum for first degree murder applied to his case. Bearing on this determination was the PCRA court's skepticism about Appellant's testimony that neither plea counsel nor post-sentence motion counsel, both veteran

attorneys highly specialized in criminal law, advised him of the 35-year to life sentence he would face if he went to trial. N.T. at 58-59.

Furthermore, the PCRA court found credible plea counsel's testimony that he had discussed with Appellant the potential of a 35-year to life sentence on a guilty verdict for first degree murder should he elect to try his case. Bolstering this finding, the PCRA court expanded, was Appellant's own testimony that plea counsel had told him that he was considered a juvenile at the time he committed the shooting. Accordingly, by its Order of September 17, 2021, the PCRA court denied Appellant's petition for relief. This appeal followed.

Our review of an order denying a PCRA petition is well-settled: "We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Johnson**, 179 A.3d 1153, 1156 (Pa. 2018) (citation omitted). Furthermore, "[t]he PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020) (citation omitted).

Where a petitioner's claims raise allegations of prior counsel's ineffectiveness,

> Appellant must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable

probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Johnson*, 179 A.3d at 1158 (citations and quotation marks omitted).

In addition, this Court has provided that:

> "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004).
>
> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

*Commonwealth v. Barbosa*, 819 A.2d81, 83 (Pa. Super. 2003).

To the extent that Appellant claims that counsel's failure to interject when the trial court misstated his sentencing exposure for first degree murder constituted ineffective assistance that caused him to render an unknowing and invalid guilty plea, we note the following:

> "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007) (quoting *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the

- 10 -

range of competence demanded of attorneys in criminal cases." ***Moser****, supra.*

> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, … under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

***Commonwealth v. Morrison***, 878 A.2d 102, 105 (Pa. Super. 2005) (*en banc), appeal denied,* 585 Pa. 688, 887 A.2d 1241 (2005) (internal citations omitted).

A valid guilty plea must be knowingly, voluntarily and intelligently entered. ***Commonwealth v. Pollard***, 832 A.2d 517, 522 (Pa. Super. 2003). The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. ***Commonwealth v. Hodges***, 789 A.2d 764 (Pa. Super. 2002) (citing Pa.R.Crim.P. 590). Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. ***Commonwealth v. G. Watson***, 835 A.2d 786 (Pa. Super. 2003). This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. ***Commonwealth v. Muhammad***, 794 A.2d 378, 383–84 (Pa. Super. 2002).

***Commonwealth v. Kelley***, 136 A.3d 1010, 1012–13 (Pa. Super 2016).

Our courts have required the withdrawal of guilty pleas under circumstances where a defendant was understandably unaware of, or misled

- 11 -

about, what maximum sentence could apply should the defendant elect to stand trial and be found guilty:

> In *Commonwealth v. Hodges*, 789 A.2d 764 (Pa.Super. 2002), a 16-year-old defendant was permitted to withdraw a negotiated plea where he pled guilty to avoid the death penalty but was in fact ineligible for the death penalty because of his age. Similarly, in *Commonwealth v. Lenhoff*, 796 A.2d 338 (Pa.Super. 2002), the defendant was permitted to withdraw a negotiated plea where, although his sentence was in accord with the plea bargain, he was told that he faced a 10-year maximum when it was actually less.
>
> At the same time, we do not believe that every mistake in computing the possible maximum or advising the defendant of the possible maximum will amount to manifest injustice justifying the withdrawal of a guilty plea; the mistake must be material to the defendant's decision to plead guilty. This determination must be fact- and case-specific. Certainly, if a defendant were to plead guilty to avoid a death sentence when there is no possibility of a death sentence, then this mistake would clearly be material. On the other hand, suppose there were a robbery of five people together with conspiracy and weapons charges, and the defendant were told that he faced a maximum sentence of 70 to 140 years rather than 65 to 130 years. If the plea negotiations resulted in a sentence of 5 to 10 years, then this mistake would not be material.

*Barbosa*, 819 A.2d at 83.

Appellant argues that guilty plea counsel rendered ineffective assistance by failing to advise him during his oral plea colloquy that the trial court on two occasions had incorrectly instructed him that he faced mandatory minimum sentence of life imprisonment if he elected to go to trial and the jury returned a verdict of guilty on the count of first degree murder. In fact, because Appellant was 17 years old at the time of the shooting, the mandatory minimum sentence for first degree murder applicable to him was 35 years' imprisonment.

- 12 -

Prior to giving the advisements in question, the trial court had halted its oral colloquy to address Appellant's apparent distress over, and disagreement with, plea counsel's advice that he accept the Commonwealth's negotiated offer of 20 to 40 years' incarceration in exchange for his plea of guilty to one count of third degree murder:

**Trial Court:** The last ground on which you can file an appeal is if you said later that your attorney was ineffective in representing you. Are you satisfied with the advice of your attorney?

**[Appellant]:** No.

**Trial Court:** Okay. So we have a problem. What's going on? Do you want to talk to him some more? Do you want to –-

Let me be clear with you, Mr. Williams. You have an excellent attorney. He's going to give you his advice. In the end, you have to decide whether you take it or not. Do you understand that?

**[Appellant]:** Yes.

**Trial Court:** So you might not be happy with what you're hearing him say, but I know he's an excellent attorney because he's been around for years. So I know that he's ready. He's prepared to do your case. So, I mean, nobody can force you into pleading guilty. You do what you want. We have a jury panel next door. I'll do a jury. It doesn't matter to me in the sense that this is my job. I do it. Nobody's trying to pressure you into anything. You have to make the decision in the end.

So if you want more time to speak to your attorney, that's fine. If you want me to put the jury panel in here, that's fine too. You have that right. Do you understand that?

N.T., 10/5/15, at 14-15.

At this time, plea counsel reiterated that he had offered his recommendation in favor of pleading after "reviewing everything there is to see in the case[,]" and he maintained that Appellant made his decision to plead after listening to both him and, "more importantly, I think, his brother and his mother that that's probably the best way to go." N.T. at 16. Plea counsel also assured the trial court that were Appellant to decide to go to trial, he was prepared for that as well. N.T. at 16.

The trial court asked again if Appellant was satisfied that plea counsel was prepared, ready to defend him at trial, and giving him good advice. Appellant reiterated his earlier dissatisfaction, saying, "I said no." N.T. at 17. Nevertheless, prior to receiving any misstatement from the trial court about the mandatory minimum sentence he would face for first-degree murder if he elected a jury trial, he affirmed that he wished to continue with his guilty plea:

> **Trial Court:** All right. What do you want to do? Do you want to plead guilty?
>
> **[Appellant]:** **I'm [sic] plead guilty**.
>
> **Trial Court:** I can't hear you.
>
> **[Appellant]:** **I said, yes, I'm going to plead guilty**.

N.T. at 17 (emphasis added).

The trial court, however, explained that it needed to develop a record clarifying why Appellant was not satisfied with plea counsel, so it cleared the courtroom of everyone except Appellant, defense counsel, Appellant's family, and court staff and asked Appellant to specify his complaint about plea counsel. Appellant answered,

**[Appellant]:** I'm unhappy that I was never told – I was told today that I had to make a decision like this, to take this plea deal. I was never told that I had no chance of winning this case or I would have a strong chance of losing or anything. I had to make this decision, like, today.

N.T. at 18.

The trial court verified with Appellant that plea counsel had visited him at prison to discuss his case and consider all offers, which began several months earlier with an offer of 25 to 50 years', then 22 ½ to 50, until, eventually, the present offer of 20 to 40 years. Ten days prior to trial, plea counsel visited Appellant at the Detention Center, where, he explained to the court, they discussed the latest offer and Appellant's chances for prevailing at trial.

**Plea Counsel:** And I continued to communicate those offers to my client and his family. A few times when I was up at the prison, most recently, when I got the number down to 20 to 40, I spoke to my client September 25th at the Detention Center where we talked about the new offer and the evidence and the difficulty with the case. And when my client [asks] that there is no chance to win the case, I told him that my opinion was that he would not win the case based on everything that I know about the case and having tried several hundred of these cases over the years. So that's how we left it on the 25th then. I told him to continue to think about it.

I've been in touch with his family throughout the last two weeks about this issue, and then this morning we all spoke

in the booth again at length. Again, he's not thrilled with this decision.

**The Court:** Right.

**Plea Counsel:** But that's where we are, from my perspective on it.

N.T. at 18-19.

It was at this point in the colloquy that the trial court first issued erroneous instructions advising Appellant he would receive a mandatory sentence of life imprisonment if he elected to stand trial and a jury found him guilty of first degree murder:

**The Court:** I mean, I think what you need to understand here, you're 20, that the Commonwealth is probably going to go in on first-degree murder.

**Plea Counsel:** Yes.

**The Court:** Is that what the issue is?

**Plea Counsel:** Yes. Yes.

**The Court:** I know it's a shooting. I know somebody was shot in the head.

**Plea Counsel:** Yes.

**The Court:** I mean, this is how much I know. New Year's Eve, you know, free for all. [Appellant] shoots at person running into house. Innocent person is hit in the head. It's called transferred intent. That's what I know. Nothing. I get the basics because I don't want to know anything before the trial.

But what I do know from that is that the Commonwealth will probably ask me to charge on first-degree murder and then I always charge on third-degree murder. That's what you're pleading to, if you are, and this is – if I kept on, if I continued

with your colloquy, **what I'd be telling you is that if you were to be found guilty of first-degree murder the sentence is life without parole. I cannot change that. The judge has no authority to change that.**

The only person in the room who can get you out from under first-degree murder, I mean, aside from if the jury were to find you not guilty of it, is the government. **The Commonwealth is the only person in the room who is allowed to make an agreement with you to plead to a lesser offense and not serve life.**

So that's what you need to understand. I've seen a lot of 20 year olds sit in that seat, you know. I'm not telling you what to do, because I'm in the middle. I am not on either side. My job as a judge is to be in the middle. I'm not for you. I'm not against you. I'm not for or against them. I know everybody thinks, like, the judge works for the prosecutor. No. Not in here.

But you've go to understand that I don't – I'm not pushy either. You do what you want in my courtroom. I'm not one of those telling you you've got to plea or whatever. I'm here. You're 20 years old. **I've seen 20 year olds saying,['] no, I'm going to trial['], get first-degree murder, get life, then it's done and then they're crying, walking out the door.**

Your attorney is really experienced. He knows, but you've got to make your choice.

So you know everything now. It's not like you didn't know there was an offer at all, because I knew.

N.T. at 20-22 (emphasis added)

The trial court reviewed with Appellant the ten-month long, court-supervised, pretrial plea negotiations between plea counsel and the Commonwealth, and it reminded Appellant that "your attorney was talking to the DA, and he got them to lower the number. That is the best number you're going to get." N.T. at 22. Plea counsel and the trial court also explained that the Commonwealth indicated it would oppose defense counsel's request for a bench trial and, in so doing, had exercised its right to a jury trial. N.T. at 23.

With that, the trial court asked one last time if Appellant would prefer a jury trial, and Appellant opted to plead guilty:

> **Trial Court:** You can also have your right to a jury trial. Do you want that?
>
> **[Appellant]:** No.
>
> **Trial Court:** Do you want to continue with the plea?
>
> **[Appellant]:** Yeah.
>
> **Trial Court:** Okay. I think we have a record.

N.T., 10/5/15, at 20-22, 23.

While this record shows that the trial court twice misstated that Appellant faced a mandatory minimum sentence of life imprison if he went to trial and were convicted of first degree murder, it also substantiates that **prior** to receiving this erroneous information from the trial court, Appellant had already indicated to the court that despite his displeasure with plea counsel he was staying with his decision to plead guilty. Accordingly, Appellant has failed to establish that a reasonable probability exists that but for plea

counsel's failure to correct the trial court's subsequent misstatements, he would not have pleaded guilty.

Moreover, at the PCRA hearing, the PCRA court found credible plea counsel's assertion that he had told Appellant on multiple occasions when discussing the Commonwealth's several plea offers that a 35-year mandatory minimum for juveniles would apply in his case. This finding was supported to some degree by Appellant's admission at the PCRA hearing that Appellant had informed him during their discussions that he was a juvenile at the time of the crime.

In contrast, the PCRA court deemed incredible Appellant's contention that he had never once been advised by either of the two highly experienced criminal defense attorneys who represented him during the guilty plea phase and post-trial motion phase, respectively, that he faced a 35-year mandatory minimum rather than a life sentence. Instead, the trial court was of the opinion that Appellant had made the sound and informed decision to take the 20 to 40-year plea sentence rather than face a mandatory minimum sentence of 35 years to life associated with a guilty verdict.

We see no reason to disturb the credibility determinations of the court in this instance where record evidence exists to support it. **See Small**, **supra** (emphasizing we may not undo credibility determinations supported by evidence). In arriving at this conclusion, we take guidance from this Court's decision in **Barbosa**, **supra**, in which this Court acknowledged the potential for manifest injustice whenever there occurs during a plea court's oral colloquy

a notable exaggeration of a defendant's sentencing exposure. The chosen remedy for such a misstatement in **Barbosa**, however, was to remand for a PCRA evidentiary hearing, where a record could be developed from which the PCRA court could then determine whether, *inter alia*, the defendant was actually prejudiced by the misstatement. **Id**.

Here, unlike in **Barbosa**, we have the benefit of the PCRA evidentiary hearing record, and from this record we conclude that Appellant has failed to establish the prejudice prong of the ineffectiveness rubric. Accordingly, we deem his appeal devoid of merit, and we affirm the order denying PCRA relief.

Order affirmed.

Judge Bowes joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2022